EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen I. Montalván Ruiz<br><br>    Demandante-Peticionaria<br><br>v.<br><br>Tomás Rodríguez Navarro<br><br>    Demandado-Recurrido | Certiorari<br><br>2004 TSPR 42<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-1999-150


Fecha: 23 de marzo de 2004


Tribunal de Circuito de Apelaciones:
                         Circuito Regional VI

Juez Ponente:

            Hon. Ismael Colón Birriel


Abogados de la Parte Peticionaria:

            Lcdo. José M. Ramírez Hernández
            Lcdo. José A. Figueroa Sánchez

Abogado de la Parte Recurrida:

            Lcdo. José L. Novas Dueño


Materia: Liquidación de Sociedad Legal de Gananciales




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen I. Montalván Ruiz

    Demandante-Peticionaria

        v.

                       CC-1999-150       Certiorari

Tomás Rodríguez Navarro

Demandado-Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 23 de marzo de 2004.

> *La sociedad de gananciales **concluye** al disolverse el matrimonio [mediante el divorcio legalmente obtenido]. El divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges.* Art. 1315, 95 y 105 del Código Civil, 31 L.P.R.A. sec. 3681, 301 y 381.

Aunque el divorcio conlleva la terminación del régimen de sociedad de gananciales, la liquidación del capital común entre ex cónyuges no siempre ocurre simultáneamente con la disolución del matrimonio. En esos casos sobreviene un periodo en que se mezclan y confunden provisionalmente los bienes de los ex cónyuges hasta que se liquida finalmente la comunidad de bienes posganancial que

se crea entre ellos acaecido el divorcio.  ¿Cómo es que se liquida esa comunidad de bienes posganancial cuando se ha mantenido en indivisión por varios años, durante los cuales ha sido administrada por solamente uno de los ex cónyuges? ¿Debe ser dicha liquidación efectuada automáticamente en partes iguales o debe tomarse en consideración las aportaciones individuales de los ex cónyuges al capital posganancial?  El caso de autos nos permite contestar estas interrogantes.

I

El Sr. Tomás Rodríguez Navarro y la Sra. Carmen I. Montalván Ruiz se casaron el 23 de marzo de 1975 bajo el régimen de sociedad legal de gananciales.  Luego de dos (2) años de casados, la pareja estableció un negocio de avicultura con la ayuda del padre del señor Rodríguez Navarro, Sr. Tomás Rodríguez Díaz.  Éste pagó la construcción de cinco (5) ranchos para la crianza de pollos, los cuales se ubicaron en una finca propiedad del mismo señor Rodríguez Díaz.  En 1980, el matrimonio obtuvo un préstamo comercial de Small Business Administration –S.B.A.– por la cantidad de $150,000 para invertir en el negocio de avicultura, en el cual figuraban como codeudores el Sr. Tomás Rodríguez Díaz y su esposa, la Sra. Manuela Navarro Barros.  Además, éstos garantizaron el pago de dicho préstamo con una hipoteca sobre un inmueble de su propiedad. El producto de este préstamo se utilizó para construir cinco (5) ranchos adicionales para la crianza de pollos y se pagó

con la producción del propio negocio de avicultura del matrimonio.

En junio de 1983 el Tribunal de Primera Instancia decretó el divorcio de Montalván Ruiz y Rodríguez Navarro. Luego de disuelto el matrimonio, se acordó que la señora Montalván Ruiz residiría con los dos (2) hijos menores de edad que procreó el matrimonio en una casa propiedad del padre de Rodríguez Navarro.[1] Asimismo, estipularon que Rodríguez Navarro pagaría todas las deudas del matrimonio, incluido el balance pendiente del préstamo comercial de $150,000, el cual se pagaría de lo que produjera el negocio de crianza de pollos.

Así las cosas, el señor Rodríguez Navarro se encargó personalmente de la operación del negocio avícola, que constituía esencialmente el único bien de la comunidad de bienes posganancial. En 1986, tres (3) años después de disuelta la sociedad legal de gananciales, el señor Rodríguez Navarro gestionó un préstamo comercial por la cantidad de $282,150, cuyo pago se garantizó con los ingresos del negocio avícola. Este segundo préstamo se

---

[1] Durante la vigencia del matrimonio, la familia Rodríguez Navarro-Montalván Ruiz residió, primero, en una propiedad del señor señor Rodríguez Díaz, padre de Rodríguez Navarro, y luego en otra estructura ubicada en el Barrio Montellano de Cidra perteneciente también a éste mismo. Posteriormente, y hasta la fecha del divorcio, la pareja residió en una casa que construyeron en terrenos del señor Rodríguez Díaz, quien además pagó todos los gastos de la edificación. Esta última es la propiedad que la señora Rodríguez Navarro se queda ocupando de manera gratuita luego del divorcio.

utilizó para la construcción de seis (6) ranchos adicionales para la crianza de pollos.

Once (11) años después de disuelto el matrimonio, en agosto de 1994, la señora Montalván Ruiz solicitó ante el Tribunal de Primera Instancia la disolución de la comunidad de bienes que mantenía con el señor Rodríguez Navarro. Sostuvo, (i) que durante el matrimonio adquirieron un solar en el barrio Montellano de Cidra donde construyeron una vivienda de bloques y hormigón valorada aproximadamente en $200,000; (ii) que el señor Rodríguez Navarro retuvo la administración exclusiva de dicha propiedad, la cual mantiene arrendada desde entonces; (iii) que el señor Rodríguez Navarro también administra de manera exclusiva, desde la fecha del divorcio, el negocio de crianza de pollos establecido durante la vigencia del matrimonio, que le servía a la compañía To-Ricos, Inc. como contratista independiente; (iv) que el valor de los diez (10) ranchos de crianza de pollos existentes, el equipo y las ganancias del referido negocio excedía a los $500,000. La señora Montalván Ruiz también reclamó el cincuenta por ciento (50%) de la participación sobre **el valor y las ganancias** del negocio avícola ascendentes, según alegó y estipuló con la otra parte, a $631,715 para los años del 1983-1993.

Vistos los argumentos de las partes, el Tribunal de Primera Instancia resolvió que a la señora Montalván Ruiz le correspondía el cincuenta por ciento (50%) de los ingresos netos del negocio avícola, según reportados en las Planillas

de Contribución Sobre Ingresos, de acuerdo a la estipulación de las partes, luego de deducir el ingreso correspondiente a los seis (6) ranchos que se construyeron después de disuelto el matrimonio en 1986 y de deducir, además, el importe del préstamo de $150,000 que hicieron los ex cónyuges vigente el matrimonio. Al respecto, el tribunal de instancia expresó que:

> Todos los ingresos de Rodríguez [Navarro] provienen de su trabajo como avicultor y se estipularon a base de las planillas de contribución sobre ingresos de Rodríguez [Navarro] para los años de 1983 a 1993. En estas [sic] sólo se reduce [sic] los intereses pagados de los préstamos, no el principal.

> El demandado [Rodríguez Navarro] recibió exclusivamente los beneficios de un negocio de crianza de pollos desde el 1983 al 1993, de lo que tiene derecho la demandante [Montalván Ruiz] a recibir la mitad luego de deducirse la suma proporcional producida por los ranchos que construyó el demandado [Rodríguez Navarro] luego del divorcio (6/16 ó 3/8 partes) y los pagos del principal del préstamo ganancial para el negocio que hizo el demandado al S.B.A. y no se incluyó como deducción para estimar el ingreso neto ($150,000). Por lo tanto, de los $631,715 debemos deducir 3/8 partes correspondientes a los seis ranchones construidos $236,893.12 para un sobrante de $394,821.88. De esta suma procede deducir los $150,000 del préstamo, lo que deja un caudal neto de $244,821.88. Por ende, corresponde a la demandante la suma de $122,410.94.

En cuanto al reclamo de la participación de la señora Montalván Ruiz en la residencia ubicada en el Barrio Montellano de Cidra, el foro de instancia resolvió que dicha propiedad no era ganancial. Determinó que esta propiedad pertenecía al señor Rodríguez Díaz y a su esposa porque éstos fueron los que proveyeron el terreno y sufragaron los gastos de construcción. No conforme con la decisión del

tribunal de instancia, el señor Rodríguez Navarro acudió al Tribunal de Apelaciones.[2] El foro apelativo intermedio resolvió que, debido a que el pasivo de la sociedad legal de gananciales excedía los activos al momento de la disolución del matrimonio, en la actualidad no había bienes que liquidar entre las partes. Determinó, además, que como el señor Rodríguez Navarro asumió el pago del balance del préstamo ganancial de $150,000 de la S.B.A., con ello se liquidó implícitamente el haber ganancial y el negocio de crianza de pollos se convirtió en un bien privativo de éste.

Oportunamente, la señora Montalván Ruiz recurrió ante nos de la decisión del Tribunal de Apelaciones. Vista su solicitud, expedimos el auto de *certiorari* solicitado. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver los planteamientos presentados.

II

La sociedad legal de gananciales es el régimen matrimonial favorecido por nuestro ordenamiento jurídico. Está principalmente reglamentado por los Arts. 1295 al 1326 de nuestro Código Civil. 31 L.P.R.A. secs. 3621-3624. Supletoriamente, al régimen de sociedad legal de gananciales le aplican las disposiciones del contrato de sociedad. Art.

---

[2] Para la fecha de los referidos procedimientos, el ahora Tribunal de Apelaciones se llamaba Tribunal de Circuito de Apelaciones. No obstante, haremos referencia a dicho tribunal como Tribunal de Apelaciones conforme se dispone en la Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003, y el Reglamento Transitorio Para el Tribunal de Apelaciones aprobado el 18 de noviembre de 2003, 2003 TSPR 167.

1298 del Código Civil, 31 L.P.R.A. 3624. Tiene como causa, no el ánimo de lucro, como es usualmente el caso de la sociedad ordinaria, sino la consecución de los fines particulares del matrimonio. Int'l. Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862, 866 (1981); García v. Montero Saldaña, 107 D.P.R. 319, 322 (1978).

Durante la existencia de la sociedad legal de gananciales, los cónyuges son codueños y coadministradores de la totalidad del patrimonio matrimonial, sin distinción de cuotas. "[L]a masa ganancial está compuesta por bienes y derechos, que estando directa e inmediatamente afectos al levantamiento de las cargas familiares, son de **titularidad conjunta de los cónyuges sin especial atribución de cuotas**". Joaquín J. Rams Albesa, *La Sociedad de Gananciales*, pág. 28 (1992). (Énfasis en el original).

De otra parte, la disolución del matrimonio provoca *ipso facto* la extinción de la sociedad legal de gananciales, pues la causa de esta institución, la consecución de los propósitos del matrimonio, se desvanece ante la rotura del vínculo civil entre los cónyuges. "El divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges." Art. 105 del Código Civil, 31 L.P.R.A. sec. 381. De esa manera, surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente e alienable con el correspondiente derecho a intervenir en la

administración de la comunidad y a pedir su división. J. L. Lacruz Berdejo, Elementos de Derecho Civil *IV, Derecho de Familia*, Ed. José María Bosch, Madrid, 1997, pág. 353.

No obstante esta separación de bienes y de propiedad provista con el divorcio y el surgimiento de una comunidad de bienes, en la práctica, la liquidación de los bienes comunes entre los ex cónyuges no es necesariamente contemporánea a la disolución del vínculo matrimonial. A esos efectos, Manresa explica que:

> [Una vez deja de existir la sociedad legal de gananciales,] [m]ezclados y confundidos quedan provisionalmente los intereses de los socios y los de los terceros, el capital privativo y el capital común. **Forzosamente ha de venir un período transitorio y anormal hasta tanto que se haga la oportuna liquidación, se separe y deduzca lo que a cada cual corresponde, se averigüe si existen o no ganancias, y se dividan y adjudiquen los bienes, ya determinados, de que cada interesado ha de ser exclusivo propietario.** José María Manresa y Navarro, *IX Comentarios al Código Civil Español*, pág. 861 (6ª ed., 1969). (Énfasis suplido).

Así también lo reconoce nuestra doctrina jurisprudencial. Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 228 (1984); García López v. Méndez García, 102 D.P.R. 383, 395 (1974); Vega v. Tossas, 70 D.P.R. 393, 395 (1949). Al decretarse disuelta la sociedad legal de gananciales, surge una comunidad de bienes ordinaria entre los ex cónyuges, que se rige, a falta de contrato o disposiciones especiales, por las normas dispuestas en los Arts. 326 al 340 de nuestro Código Civil referentes a la figura de la comunidad de bienes. 31 L.P.R.A. secs. 1271-1285. García López v. Méndez García, *supra*, pág. 395.

*Véase además*, <u>García v. Montero Saldaña</u>, *supra*, págs. 331–332; <u>Calvo Mangas v. Aragonés Jiménez</u>, *supra*, pág. 228.

Se trata de un patrimonio en liquidación que se rige por normas distintas a las de la sociedad legal de gananciales. J.L. de los Mozos, *Comentarios al Código Civil y Compilaciones Forales* (dirigidos por Manuel Albaladejo), Madrid, Editorial Revista de Derecho Privado y Editoriales de Derecho Reunidas, 1984, Tomo XVIII, pág. 458. Esta comunidad de bienes posganancial o posmatrimonial existe hasta que se liquida finalmente la sociedad de gananciales y puede, por tanto, extenderse indefinidamente, pues la acción para liquidar la cosa común nunca prescribe. Art. 1865 del Código Civil, 31 L.P.R.A. sec. 5295. No obstante, cabe mencionar que los ex cónyuges no están obligados a permanecer en comunidad. Art. 334 del Código Civil 31 L.P.R.A. sec. 1279. Cualquiera de ellos puede pedir la división de la cosa común en cualquier momento. *Id.* Incluso, mientras exista la comunidad de bienes posganancial, uno de los ex cónyuges puede pedir al tribunal que se nombre un administrador judicial. Art. 332 del Código Civil, 31 L .P.R.A. sec. 1277. Podría, además, ejercer su derecho de coadministrar los bienes comunes y hasta interponer acciones de desahucio y reivindicación. *Véase*, <u>Soto López v. Colón Meléndez</u>, 143 D.P.R. 282 (1997), nota alcalce número 7.

Conforme a lo anterior, al momento de disolverse la sociedad de gananciales subsisten sus activos y pasivos,

pero en renglones separados, pendientes de liquidación. Si esta última operación se pospone, el monto de los activos y de los pasivos puede variar; pueden producirse frutos, saldarse deudas, sufrirse pérdidas, obtenerse ganancias o incurrirse en gastos con relación al caudal común. Por consiguiente, en la adjudicación final de la participación que le corresponde a cada ex cónyuge, debe **tomarse en consideración, de acuerdo a la evidencia sometida, si uno de los ex cónyuges puede interponer frente al otro un crédito por los cambios y operaciones ocurridas en el haber común. Igualmente, conforme se dispone en el Art. 328 del Código Civil, 31 L.P.R.A. sec. 1273, hay que considerar cualquier efecto adverso que cualquiera de los ex cónyuges cause al haber común.**[3]

### III

Por su parte, la comunidad de bienes existe "cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". Art. 326 del Código Civil, 31 L.P.R.A.

---

[3] El artículo citado dispone que:

> Cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho.

De acuerdo a este postulado, los comuneros deben proteger de buena fe el bien común, máxime cuando dicho bien se encuentra *de facto* bajo su control y administración exclusiva pues llegado el momento de la división, tendrá que entregar lo que por derecho corresponda a cada comunero codueño. González v. Quintana, 145 D.P.R. 463 (1998); López v. Meléndez, 143 D.P.R. 282 (1997). Ello significa que si un partícipe de la comunidad causa algún

sec. 1271. La participación de los comuneros en la administración de la cosa tenida en común, así como su parte en el activo y pasivo de esta cosa, será proporcional a sus respectivas cuotas, que "[s]e presumirán iguales, **mientras no se pruebe lo contrario**". Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272. (Énfasis suplido). Para la liquidación de la comunidad de bienes se recurre supletoriamente, a su vez, a las disposiciones sobre la partición de la comunidad hereditaria. Art. 340 del Código Civil, 31 L.P.R.A. sec. 1285. En el caso específico de la comunidad posganancial, hemos resuelto que los preceptos aplicables a su liquidación, en atención a los pasos que dispone el Código Civil, "son las disposiciones relativas a la aceptación de la herencia a beneficio de inventario y el derecho a deliberar". Janer Vilá v. Tribunal Superior, 90 D.P.R. 281, 300 (1964).

De acuerdo al Art. 1322 del Código Civil, la división de los bienes que componen la comunidad de bienes posganancial al momento de la disolución del matrimonio, se hará por partes iguales entre los ex cónyuges. Específicamente, se provee que luego del inventario y del pago de los pasivos gananciales, "[e]l remanente líquido de los bienes gananciales se dividirá por mitad entre marido y mujer o sus respectivos herederos". 31 L.P.R.A. sec. 3696. No obstante, para atenerse a lo que establece el Código Civil, es forzoso comprender que la igualdad de cuotas –

_____

daño al bien común responderá individualmente por el daño

derivada de la equiparación de los cónyuges bajo el régimen ganancial– es presunta bajo el régimen de comunidad de bienes y, por tanto, sujeta a rebatirse por prueba pertinente. Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272 ("[s]e presumirán iguales, mientras no se pruebe lo contrario, las porciones correspondientes a los partícipes en la comunidad").

Al tratar el tema de la cuota que finalmente debe adjudicarse a cada ex cónyuge al dividirse el remanente líquido de la comunidad posganancial, Díez-Picazo y Gullón explican que los efectos de dicha comunidad al momento de su liquidación pueden examinarse desde dos vertientes distintas. La primera sostiene que, a pesar de haberse decretado el divorcio, la sociedad legal de gananciales no se extingue hasta que no se realiza la liquidación. L. Díez-Picazo y Antonio Gullón, *Sistema de Derecho Civil – Derecho de Familia. Derecho de Sucesiones–*, Vol. IV, Ed. Tecnos, Madrid, 1984, pág. 271. Según los autores citados, este primer escenario:

> [dispone una especie de] sociedad de gananciales continuada, de manera que continúan rigiendo entre los partícipes las mismas reglas de la sociedad. Ello llevaría como consecuencia el que los frutos y rentas de capital y trabajo continuarían incrementando la sociedad y el régimen de responsabilidad, gestión y disposición continuaría siendo el mismo que anteriormente. **Esta tesis no parece sostenible. No hay razón para continuar incrementando el patrimonio común con las rentas del trabajo e industria o con las rentas de capital de los bienes que nos sean comunes, sino privativos; y falta toda posibilidad de aplicar las reglas sobre gestión, administración y**

_____

causado. *Véase*, casos citados anteriormente.

**disposición de los gananciales, que presuponen la subsistencia del matrimonio [...].**

Por ello, parece más correcto entender que estamos en presencia de un patrimonio colectivo o comunidad de bienes cuya naturaleza se transforma. Es un patrimonio formado por lo bienes que fueron gananciales, cuya titularidad la ostentan los [ex cónyuges] [...]. *Id.*, a la pág. 271-272.

Conforme a esta segunda vertiente, se dispone, entre otras cosas, que la comunidad de bienes posganancial "no se ve aumentada con las rentas de trabajo ni con la de capital, que serán en todo caso privativas" del ex cónyuge que las produzca. *Id.*, a la pág. 272. Esto implica que en el inventario que precede la división de la comunidad de bienes posganancial sólo se incluyen los bienes y frutos del patrimonio común existentes al momento de la disolución del matrimonio. J.L. Lacruz Berdejo, *Elementos de Derecho Civil, supra,* pág. 361. **No obstante, hay que hacer la salvedad que deberán excluirse del inventario, "en cambio, cuantos bienes no existan entonces, aunque formaran parte del consorcio al disolverse [...].** *Id.* Siguiendo este mismo razonamiento, se aclara además que las obligaciones que contraiga cualquier partícipe de la comunidad con posterioridad a la disolución del matrimonio, recaen sobre su capital privativo. *Id.*; M. Rivera Fernández, *La Comunidad Postganancial*, Ed. J.M. Bosh Editor, Barcelona, España, 1997, pág. 85.

En cuanto a la situación particular que surge cuando se adquieren nuevos bienes durante la vigencia de la comunidad

de bienes posganancial con capital procedente de la comunidad misma, se expresa lo siguiente:

> Las soluciones al respecto son dos. La primera es la rigurosa aplicación del principio de subrogación real: el bien adquirido entra a formar parte del patrimonio colectivo, cualquiera que sea el adquiriente, si la contraprestación que se paga procedía de aquél. La segunda solución es entender que el adquiriente se hace deudor de la sociedad por el valor de los bienes de que dispuso para adquirir, pero que el bien adquirido es suyo propio. *Id*., a la pág. 273.

Con relación a esto, Manuel Rivera Fernández sostiene en su obra *La Comunidad Postganancial* que en los casos en que uno de los copartícipes de la comunidad posganacial adquiere para sí otros bienes con fondos comunes, ésta nueva adquisición le pertenece a dicho comunero exclusivamente, sin perjuicio del "crédito a favor de la comunidad posganacial por el importe actualizado de los fondos comunes utilizados". M. Rivera Fernández, *supra*, a la pág. 82. De esta manera se rechaza la aplicación de la doctrina de subrogación real cuando no existe una sociedad de gananciales. *Id*., a la pág. 83. "[E]l que se apropi[a] de frutos o rentas comunes, debe, simplemente, devolverlas, pero no está obligado a más, conservando el dominio de lo adquirido." *Id*. a la págs. 79-80. Al respecto, se explica además que:

> [...] la subrogación real opera constante la sociedad legal de gananciales [...], algo lógico ante la existencia de un patrimonio con un particular destino: levantamiento de las cargas del matrimonio y participación de los cónyuges en los beneficios derivados del consorcio. Pero no existe apoyo legal que nos induzca a afirmar su operatividad una vez disuelta ésta. Por

ello, estimamos que debe primar la titularidad formal, a menos que una regla disponga la subrogación real. De este modo, la adquisición practicada debe estimarse en todo momento privativa, quedando siempre a salvo la obligación de devolver, en su caso, con intereses lo que tomó prestado, y con independencia en la responsabilidad en que hubiese incurrido por haber tomado dinero, sin tomar en consideración a los demás, de una comunidad de la que él sólo era uno de los partícipes. *Id.*, a la pág. 83.

En vista de todo lo anterior, la división de los bienes adquiridos, vigente el matrimonio, bajo el régimen ganancial y la de los frutos correspondientes resulta sencilla de efectuarse rápidamente después de la disolución del matrimonio. En tanto se prolongue la existencia de la comunidad posganancial, no obstante, se complica el cálculo de las cuotas, particularmente si uno solo de los cónyuges dedica su esfuerzo y trabajo al mantenimiento y acrecimiento del haber común. M. Rivera Fernández, *supra*, a la págs. 9, 111.

Cuando la liquidación de los bienes gananciales se realice una vez disuelto el vínculo matrimonial, la proporción correspondiente a cada ex cónguye es en partes iguales. Ahora, si se mantiene la indivisión de la comunidad, dicha proporción puede variar, ya sea por el aumento en el valor de los bienes incluidos en el inventario original, por el aumento en su nivel de producción de frutos, o por nuevas adquisiciones.

En este último caso, en el que no se liquida la comunidad de bienes inmediatamente cuando termina el matrimonio, al determinarse la participación de cada ex

cónyuge es preciso distinguir entre el valor de los bienes existentes al momento de la disolución de la sociedad legal de gananciales *vis a vis* el valor al momento de su liquidación. Hay que examinar entonces el cambio –aumento o disminución– en el valor al momento de la liquidación que se da como consecuencia del mero pasar del tiempo o la naturaleza misma de la cosa en común y el aumento en el valor de estos mismos bienes, o el aumento de los frutos producidos por éstos, que se deban a la gestión exclusiva de uno de los ex cónyuges.

En caso de desigualdad en las aportaciones o gestiones que realice cada uno de los ex cónyuges, la presunción de equivalencia de cuotas en la comunidad posganancial podría ser rebatida, mediante prueba de que algunos o todos los **frutos** de los bienes habidos en común o el **aumento en el valor** de la cosa en común *per se* son producto de la labor exclusiva de uno de los ex cónyuges, o más de uno que del otro. En esas circunstancias, el aumento en el valor de los bienes o en su producción de frutos se dividirá conforme a las aportaciones de gestión y trabajo de cada ex cónyuge a la cosa en común. De otra parte, el aumento en el valor del haber común o el aumento en el nivel de su producción de frutos luego de disuelto el matrimonio que sea resultado del mero pasar del tiempo, corresponde a ambos comuneros por partes iguales.

Esta norma responde al hecho de que una vez disuelto el matrimonio, los ingresos de un ex cónyuge producidos por su

esfuerzo y trabajo no son gananciales. Al concluir la sociedad legal de gananciales, se forma con los bienes existentes hasta ese momento una comunidad ordinaria, la cual no se rige por las normas de la sociedad legal de gananciales. Por ende, los bienes que cada ex cónyuge produzca de ahí en adelante son privativos. *Véase*, Soto López v. Colón Meléndez, 143 D.P.R. 282 (1997); Raúl Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Ed. U.I.A., San Juan, P.R., Vol. I, 1997, pág. 457. Lo anterior supone que, disuelta la sociedad de gananciales, los frutos de los bienes privativos y los ingresos procedentes del trabajo o industria de los ex cónyuges dejan de ser comunes. J.L. de los Mozos, *supra,* pág. 457. Como consecuencia lógica cesa, además, la presunción de ganancialidad que dispone el Art. 1307 del Código Civil. 31 L.P.R.A. 3647.[4] *Id*. **Por lo tanto, si luego de disuelto el matrimonio el aumento en el valor de los bienes en comunidad o el aumento en la producción de frutos se debe a la gestión exclusiva de uno de los ex cónyuges, dicho aumento no puede adjudicarse automáticamente como parte de la propiedad en común. Se trata de una participación que le corresponde privativamente en su totalidad al ex cónyuge que la produjo con su trabajo individual.**

---

[4] Dicho artículo dispone que "[s]e reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer".

Con relación a esto, la profesora Fraticelli Torres explica que:

> La división de los bienes de la sociedad por mitad, como norma mandatoria, **se dará sobre el activo inventariado a la fecha de la disolución de la sociedad, pero, si la liquidación no se da con premura, no debe ser necesariamente esa proporción en que ha de repartirse lo que se produzca a partir de ese avalúo, ya sea por <u>nuevas adquisiciones</u> o por el incremento en valor de los bienes incluidos en el inventario original**. La importancia de establecer esta distinción consiste en que la distribución del exceso o incremento no necesariamente es igual bajo un régimen de gananciales que bajo el régimen de comunidad ordinaria. <u>**La participación por mitad en los bienes que genere la comunidad es presunta, y puede cualquiera de ellos probar que el aumento en valor se debe a participaciones y esfuerzos desiguales de los comuneros en la gestión de los bienes después de la disolución**</u>. (Énfasis suplido). Migdalia Fraticelli Torres, *Un nuevo acercamiento a los Regímenes económicos en el Matrimonio: La sociedad legal de Gananciales en el Derecho Puertorriqueño*, 29 Rev. Jur. U.I.P.R. 413, 506-507 (1995)

De igual forma se pronuncia el profesor Rams Albesa, quien añade además la necesaria sugerencia de remitir los conflictos sobre valoración del trabajo en pro de la comunidad y la adjudicación de los frutos de éste a los tribunales de instancia.

> Esta comunidad [posganancial] estará integrada por los bienes que en el momento de la disolución de la sociedad de gananciales —coincidente con el del nacimiento de esta específica comunidad— constituían el activo de la masa común y, por los frutos netos que estos bienes produzcan, consecuentemente se incluirán en ella los subrogados a que dé lugar el tráfico de unos y otros.
>
> Se trata, en todo caso, de mantener un contenido lo más estático posible, aunque sin impedir, en modo alguno, el natural desenvolvimiento de la actividad económica, por lo que habrán de continuarse las operaciones pendientes.

**No obstante lo anterior, resulta muy difícil determinar a quién y en qué proporción, en su caso, corresponden los resultados obtenidos en las operaciones y trabajos en curso en el momento de la disolución, por lo que en los escasos supuestos de conflicto entre los copartícipes habrá de reconocerse un alto grado de discrecionalidad al juzgador de instancia en la valoración de las pruebas y argumentos en pro y en contra que se le ofrezcan por las partes en conflicto.**

El pasivo vendrá constituido por el que lo fuera común también al tiempo de la disolución del consorcio y por el que se genere, como en cualquier comunidad, por la administración de los bienes y derechos que la constituyan; **en este sentido se admite por la generalidad que el administrador tiene un efectivo derecho a que su trabajo se remunere**. Joaquín J. Rams Albesa, La Sociedad de Gananciales, págs. 418-419 (1992). (Énfasis suplido).

El trabajo de cada ex cónyuge, demás está decir, es la propiedad individual por antonomasia, por lo que procede valorarse como tal. Resolver de otro modo conllevaría la desvalorización del valor intrínseco del trabajo del ser humano, del sudor y del esfuerzo, que merecen igual o mayor consideración que la impersonal aportación pecuniaria.[5]

Esta aportación que hace un ex cónyuge a la administración y desarrollo de la comunidad posganancial mediante su trabajo y gestión debe distinguirse de la obligación que tienen los comuneros de contribuir a la conservación del haber común. *Véase* Art. 329 del Código

---

[5] En el contexto de alimentos a hijos comunes hemos resuelto similarmente "que la labor personal de un cónyuge que al administrar la pensión la convierte y destina a todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica de sus hijos (Art. 142 Código Civil) debe estimarse como descargo de su propia obligación de alimentar y constituye elemento apreciable por el juzgador al dirimir la reclamación de crédito entre alimentantes solidarios". <u>Mundo</u> v. <u>Cervoni</u>, 115 D.P.R. 422 (1984).

Civil, 31 L.P.R.A. sec. 1274. Ningún comunero está obligado a desarrollar la cosa en común de manera que produzca frutos en exceso de los que se producirían por el mero pasar del tiempo. Incluso, de optar por hacerlo, dicho comunero respondería individualmente si ocasiona algún menoscabo al bien común. Art. 328 del Código Civil, 31 L.P.R.A. sec. 1273. González v. Quintana, *supra*; López v. Meléndez, *supra*. Por lo tanto, si un ex cónyuge se dedica a acrecentar con su gestión y trabajo la comunidad de bienes posganancial, debe entenderse que su esfuerzo personal va dirigido a beneficiar su haber privativo en la porción que le corresponde de dicha comunidad.

En resumen, las cuotas de los ex cónyuges en la comunidad posganancial –antes de inventariar los activos y pasivos, computar los posibles créditos que uno u otro ex cónyuge tenga contra la sociedad, determinar si hay deudas privativas incurridas durante el matrimonio, etc.– se presumen iguales al momento de disolverse la sociedad de gananciales. Esta presunción es rebatible respecto a las situaciones mencionadas anteriormente, **y también sobre toda deuda, gasto, esfuerzo o crédito legítimo incurrido durante el período de vida transitorio de la comunidad posganancial**. Procedería entonces valorar el incremento o la disminución del haber posganancial, según sea el caso, que corresponda a la aportación real o gestión de cada uno de los ex cónyuges para así determinar el cambio, de haber alguno, en la proporcionalidad de las cuotas de cada comunero.

Vista la normativa anterior, veamos los hechos del presente caso.

IV

El 17 de junio de 1983, fecha en que se decretó el divorcio y simultánea disolución de la sociedad legal de gananciales compuesta por Montalván Ruiz y Rodríguez Navarro, las deudas del patrimonio ganancial sobrepasaban los activos.[6] De haberse entonces liquidado la sociedad, cada ex cónyuge habría tenido que asumir, en igual proporción, tanto los activos como los pasivos del patrimonio adquirido vigente su matrimonio. Sin embargo, al posponerse la liquidación por más de diez años,[7] se abrió paso a las fluctuaciones naturales que todo negocio ha de experimentar en el mercado.

El resultado de estas fluctuaciones es el objeto de la presente controversia. A estos efectos cabe recalcar que los deberes del ex cónyuge que conserva la administración de un negocio en marcha tenido en comunidad pos ganancial, no son más ni menos que los de cualquier otro comunero respecto a un bien objeto de tal forma de propiedad: "servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su

---

[6] La pareja estuvo casada desde el 23 de marzo de 1975.

[7] El divorcio se decretó en 1983 y Montalván Ruiz presentó la demanda de división de bienes en 1994.

derecho", no "hacer alteraciones en la cosa común" sin mediar el consentimiento de los demás y contribuir a los gastos de conservación de la cosa común de acuerdo a su participación en la comunidad. 31 L.P.R.A. secs. 1273, 1274, 1276. **No existe deber alguno de contribuir a incrementar el valor de la cosa. Cualquier participación o esfuerzo que conlleve tal incremento trasciende la obligación mínima de los comuneros, por lo que se crea un derecho de remuneración para el mayor contribuyente.**

V

A

Entendemos entonces que el foro apelativo intermedio actuó correctamente en cuanto reconoció  –a base de las diferencias entre la sociedad legal de gananciales y comunidad posganancial– que las ganancias que se derivaron de bienes originalmente gananciales después de la disolución de la sociedad no son automáticamente divisibles por mitad sin tomar en consideración las aportaciones de cada uno de los ex cónyuges durante la existencia de la comunidad. Así subsanó, en parte, el error del tribunal de instancia, que adjudicó sin más, la mitad de las ganancias del negocio de crianza de pollos a la señora Montalván Ruiz.

De los principios que rigen la comunidad de bienes, se desprende que la aportación de los comuneros en la comunidad posganancial afecta la adjudicación final del haber común. Esta norma aplica y afecta dicha distribución final de la comunidad posganancial de manera independiente al crédito

que puede surgir a favor del ex cónyuge que se ha desempeñado como único administrador de los bienes en comunidad, el cual es resultado de la compensación debida por la contribución desigual de labores. Ante esta realidad jurídica, un posible remedio sería asignarle un sueldo o retribución razonable al señor Rodríguez Navarro como administrador del negocio de avicultura y distribuir los bienes adquiridos durante la vigencia de la sociedad legal de gananciales y aquellos adquiridos con el trabajo y gestión exclusiva del señor Rodríguez Navarro, luego de disuelta dicha sociedad, en partes iguales.

Lo anterior, sin embargo, sería un remedio incompatible con nuestro ordenamiento civilista pues extiende indefinidamente el régimen económico de sociedad de gananciales después de disuelto el matrimonio. Ello tendría el efecto de mantener a las partes "casadas" para efectos de su propiedad y bienes, a pesar de su divorcio. No habría entonces diferencia en la manera en que se han de dividir los bienes bajo el régimen de gananciales y bajo el régimen de comunidad de bienes. De igual forma, sería injusto tratar la labor del señor Rodríguez Navarro en el negocio de avicultura como una gestión de un negocio ajeno. Dicha labor se trata mas bien de una asunción exclusiva de los deberes y gastos del negocio común por parte de uno de los copropietarios que resultó, en el presente caso, en el acrecimiento de la empresa y la producción de frutos.

Sin dudas, la señora Montalván Ruiz tiene derecho a reclamar que el señor Rodríguez Navarro reintegre al haber comunal los frutos y utilidades que hubiere tomado en exceso a su cuota, de ser éste el caso. Sin embargo, previo a esa determinación, será necesario delimitar cuál es la justa proporción de cuotas entre los ex cónyuges al momento de liquidar la sociedad, i.e. si en el transcurso de estos veinte (20) años de indivisión se ha rebatido la presunción inicial de igualdad de cuotas que establece el Código Civil. A este fin, el señor Rodríguez Navarro tiene derecho a reclamar de la señora Montalván Ruiz una contribución equivalente a la mitad de los gastos de conservación y administración del negocio, incluso la mitad del justo valor de su labor como administrador, incurridos en los años en los que se mantuvo en comunidad posganancial, si esa es la participación que finalmente se le adjudica. **Para ella eximirse de alguna parte de esa reclamación, deberá renunciar a la correspondiente parte de la comunidad que le pertenece en dominio. Así lo dispone el Art. 329 del Código Civil, 31 L.P.R.A. sec. 1274.**

B

Debe tomarse en cuenta, por supuesto, que el bien común administrado tiene un valor inicial, separado de la labor de administración, y que no empece cualquier gestión de buena o mala administración, continúa siendo común. El aumento en el valor del bien por razón de una buena administración corresponde a los comuneros en proporción a sus cuotas; la

disminución en el valor, por mala administración, corre por cuenta del comunero que la administró mal.

No obstante, la ganancia del negocio de crianza de pollos no es un aumento en el valor de los ranchos que en su origen eran gananciales. Ello se trata de un fruto industrial, que se percibirá de acuerdo, no sólo a las cuotas de los partícipes, sino también a la aportación privativa invertida en su obtención, esto es, en este caso, al trabajo personal y aportación económica privativa del señor Rodríguez Navarro.

VI

Conforme a lo anterior, pasemos a determinar cómo deben adjudicarse las participaciones del señor Rodríguez Navarro y la señora Montalván Ruiz en vista de los hechos ante nos.

**A. Los cinco (5) ranchos iniciales construidos por el Sr. Tomás Rodríguez Díaz**

Los cinco (5) primeros ranchos de crianza de pollos fueron construidos a costa del padre del demandado, señor Rodríguez Díaz. Como bien indicó el foro apelativo, no se cumple el requisito de haber sido "adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno sólo de los esposos". Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641. Por tanto, el valor de estos primeros cinco (5) ranchos de crianza de pollos no puede estimarse ganancial.

No obstante, el señor Rodríguez Navarro devengaba un beneficio económico de la administración de esos cinco (5)

ranchos, y este beneficio era ganancial por haberse "obtenido[] por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos". 31 L.P.R.A. sec. 3641. Al disolverse la sociedad de gananciales, sin embargo, cesa el carácter ganancial de los ingresos de los cónyuges y cada uno devenga beneficio económico de su empresa para sí.

En conclusión, los primeros cinco (5) ranchos no son y nunca fueron gananciales, sino propiedad de Tomás Rodríguez Díaz. No obstante, el señor Rodríguez Navarro administraba estos ranchos y, por su labor y esfuerzo, devengaba un beneficio económico. La porción de ese beneficio devengado durante la duración del matrimonio es ganancial. Aquella devengada después de disuelto el matrimonio es privativa, pues dichos cinco (5) ranchos no forman ni formaron parte del haber ganancial ahora mantenido en comunidad. En vista de ello, en cuanto a estos cinco primeros ranchos, le corresponde a la demandada únicamente la mitad de la porción del beneficio económico devengado en concepto de la labor del señor Rodríguez Navarro como administrador de estos cinco (5) ranchos desde su construcción hasta el momento del divorcio, que no hubiese sido consumida por los cónyuges durante el matrimonio.

**B. Los ranchos construidos durante el matrimonio**

Los cinco (5) ranchos construidos posteriormente, vigente el matrimonio, con el dinero del préstamo del S.B.A. eran gananciales. Por ello, la mitad del valor de la estructura física de los ranchos y del valor del negocio en

sí de estos cinco (5) ranchos **al momento de la disolución del matrimonio** le corresponde a la señora Montalván Ruiz. De igual forma, le corresponde la mitad del aumento en el valor de dicha propiedad inmueble y del negocio en sí que se deba al mero pasar del tiempo. Claro está, luego de que se sustraigan los gastos de conservación y mantenimiento y demás costos del negocio. Demás está decir, que todas las ganancias obtenidas de la operación de los ranchos durante el matrimonio son gananciales y a ella corresponden por mitad.

En cuanto a las ganancias obtenidas en la operación de estos cinco (5) ranchos gananciales luego de disuelto el matrimonio, a Montalván Ruiz le corresponde el cincuenta por ciento (50%) de las ganancias resultantes de la **producción existente** al momento del divorcio hasta el día en que sea efectiva la división de bienes. Esto es, para computar la participación en las ganancias de Montalván Ruiz debe considerarse cuál era la producción al momento del divorcio de estos cinco ranchos y computarse las ganancias resultado de dicho nivel de producción hasta la fecha de división de la comunidad de bienes en cuestión. De esa cantidad, a Montalván Ruiz le corresponde el cincuenta por ciento (50%). Aquí no hay que descontar gastos de conservación y mantenimiento porque para llegar al cómputo de las ganancias ya esa deducción, como los restantes costos y deudas

atribuibles a estos ranchos en particular,[8] debió de haberse hecho en la proporción correspondiente.  Como parte de dichas deducciones, además, debe incluirse el pago al señor Rodríguez Navarro de una cantidad por su labor al administrar la participación de la señora Montalván Ruiz en este negocio, equivalente a la mitad del salario promedio que recibiría un administrador de cinco ranchos como éstos.[9]

Valga señalar que cualquier ganancia resultado del aumento en el valor del negocio en sí o el aumento en la producción de estos cinco ranchos que exceda la capacidad de producción o valor del negocio existente al momento del divorcio, **que se demuestre se deba a la gestión de Rodríguez Navarro,** le corresponde a éste exclusivamente.  Ello es el resultado de la norma que establece que la distribución del exceso o el incremento en la comunidad de bienes no necesariamente es igual bajo el régimen de gananciales que bajo el régimen de comunidad ordinaria.  En la comunidad ordinaria, los comuneros trabajan para su beneficio individual.   La demostración de que hubo inversión de esfuerzo y gestión desigual de los comuneros rebate la

---

[8] Como, por ejemplo, el pago del principal del préstamo ganancial a S.B.A.

[9] A Rodríguez Navarro le corresponde recibir sólo la mitad del salario promedio que recibiría un administrador de cinco ranchos como los aquí en cuestión, debido a que en su labor como administrador él también administraba su participación en el negocio, esto es, el cincuenta por ciento (50%) de la operación comercial de **estos cinco (5) ranchos.**

presunción de participación por la mitad en la comunidad de bienes.

Claro está, si la capacidad de producción de estos cinco (5) ranchos y el valor del negocio en sí son los mismos a la fecha de distribución de los bienes en comunidad que la existente al momento del divorcio, o si el aumento en estas partidas se debe a factores ajenos a la gestión personal del señor Rodríguez Navarro, entonces su distribución debe ser de igual forma por la mitad.

Por último, al determinar la participación de Montalván Ruiz en las ganancias de estos cinco (5) ranchos adquiridos con una deuda ganancial, además, se le deberá abonar a ésta un crédito por concepto del pago de intereses por el uso del dinero que le correspondía como copropietaria del negocio y que Rodríguez Navarro retuvo. Para ello, se deberá calcular la cantidad que Montalván Ruiz hubiese recibido anualmente si Rodríguez Navarro hubiese optado por distribuir las ganancias que el negocio en su momento produjo conforme a las cuotas de cada codueño, según se determinen de acuerdo a los criterios antes enunciados. *Véase a esos efectos*, <u>Soto López v. Colón Meléndez</u>, *supra*.[10] Como no lo hizo, deberá

---

[10] En este caso, se resolvió que la participación de un ex cónyuge en la administración y disfrute de la comunidad de bienes posganancial es un derecho propio que puede hacerse valer sin que se tenga que evidenciar el requisito de "necesidad" provisto para los casos de alimentos. Se determinó que no procedía concederle pensión alimentaría a la ex cónyuge pues ésta poseía bienes suficientes para vivir consistentes en su participación en la comunidad de bienes posganancial. Así, se concluyó que un ex cónyuge partícipe de una comunidad posganancial, aunque no tiene derecho a recibir "alimentos" de su ex cónyuge por contar

pagar intereses al por ciento entonces vigente en el mercado por el uso del dinero que le pertenecía a Montalván Ruiz y que él utilizó para desarrollar **su** participación en el negocio. De esta forma, en estos casos particulares de comunidad posganancial, se hace justicia a aquel comunero que tolera que su capital sea utilizado para el enriquecimiento exclusivo del otro comunero, y no se premia a quien teniendo el control absoluto de la comunidad de bienes no opta por dividirla.

### C. Los ranchos construidos después del divorcio

Por último, tanto el valor como la ganancia de los seis (6) ranchos construidos después del divorcio ha de presumirse privativo del demandado Rodríguez Navarro. Este resultado responde a que, como explicamos anteriormente, una vez disuelta la sociedad legal de gananciales, los bienes que cada ex cónyuge produzca de ahí en adelante son privativos y, por consiguiente, no procede aplicar la doctrina de subrogación real en estos casos. En vista de ello, a la comunidad de bienes posganancial no le

---

con bienes suficientes para vivir, sí tiene derecho como comunero a recibir del ex cónyuge administrador de la comunidad de bienes una suma líquida periódica, la cual se ajustará en el momento en que se liquide la comunidad. Ello como parte del disfrute de los bienes en comunidad a que todo comunero tiene derecho.

Al respecto se citó el Art. 333 del Código Civil, 31 L.P.R.A. sec. 1278, que dispone que:

> **[t]odo condueño tendrá la plena propiedad de su parte y la de los frutos y utilidades que le correspondan, pudiendo en su consecuencia enajenarla, cederla o hipotecarla, y aun sustituir otro en su aprovechamiento[...].**

corresponde la titularidad de los bienes adquiridos para **sí** por uno de sus partícipes, aun cuando se obtuvieron con los frutos de la comunidad. M. Rivera Fernández, *supra*. Estos ranchos se tratan de bienes adquiridos por Rodríguez Navarro con su trabajo y el capital que él mismo gestionó. Por consiguiente, independientemente de la fuente de ingreso que le facilitó desarrollar esta industria, la propiedad y las ganancias producidas por esta partida le corresponden a éste privativamente en su totalidad pues las produjo con su trabajo individual. Estos ranchos deben entenderse como un beneficio económico personal para el señor Rodríguez Navarro, por lo que, de haber empleado para el pago del préstamo obtenido para su construcción una cantidad de bienes mayor a la que le correspondía como comunero, habrá de resarcir el exceso.

## VII

En resumen, resolvemos que cuando se mantiene la indivisión de la comunidad de bienes posganancial por cierto tiempo después del divorcio, su liquidación no tiene que ser automáticamente por partes iguales. En estos casos, la presunción legal que dispone nuestro ordenamiento civilista de que dicha división debe hacerse en partes iguales puede ser rebatida por cualquiera de los ex cónyuges si se demuestra que el aumento en el valor del bien común o en el nivel de producción de los frutos industriales se debe a la gestión y trabajo de uno solo de los comuneros.

Por lo tanto, se revoca la sentencia dictada por el Tribunal de Apelaciones y se remite el caso de autos al Tribunal de Primera Instancia para que continúen los procedimientos de forma compatible con lo aquí dispuesto.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carmen I. Montalván Ruiz

   Demandante-Peticionaria

   v.                                              CC-1999-150      Certiorari

Tomás Rodríguez Navarro

   Demandado- Recurrido


SENTENCIA

San Juan, Puerto Rico, a 23 de marzo de 2004.

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones y se remite el caso de autos al Tribunal de Primera Instancia para que continúen los procedimientos de forma compatible con lo aquí dispuesto.

     Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Naveira Merly emitió Opinión Disidente.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carmen I. Montalván Ruiz

    Peticionaria

       v.

                                  CC-1999-150

Tomás Rodríguez Navarro

    Recurrido


Opinión Disidente emitida por la Jueza Presidenta Señora NAVEIRA MERLY


San Juan, Puerto Rico a 23 de marzo de 2004


El recurso ante nos plantea una de las controversias que frecuentemente se suscitan cuando quedan disueltos los lazos de afecto y solidaridad en un matrimonio: la liquidación de la comunidad de bienes que surge al dejar de existir la sociedad legal de gananciales por razón de haberse decretado el divorcio.

Por entender que la conclusión a que llega la mayoría del Tribunal despoja a un comunero de su derecho de propiedad, al reconocer una participación mayor al condueño que ha tenido el control absoluto de lo bienes del caudal, disentimos.

A continuación detallaremos al trasfondo fáctico y procesal que da lugar al presente recurso.

I

El Sr. Tomás Rodríguez Navarro y la Sra. Carmen I. Montalván Ruiz contrajeron matrimonio el 23 de marzo de 1975 **bajo el régimen de sociedad legal de gananciales**. Al momento del matrimonio ambos eran estudiantes a tiempo completo, por lo cual dependían económicamente del padre del señor Rodríguez Navarro, Don Tomás Rodríguez Díaz (en adelante Don Tomás), y residían en una estructura y terreno propiedad de este último. Posteriormente y coetáneo al nacimiento de su primera hija, el matrimonio se trasladó a otra residencia también propiedad de Don Tomás, ubicada en el Barrio Montellano de Cidra.

Entre 1977 y 1978 el matrimonio Rodríguez-Montalván comenzó a operar un **negocio de avicultura** con la ayuda de Don Tomás, quien costeó los materiales y la mano de obra para la construcción de cinco (5) ranchos destinados a la crianza de pollos. Los ranchos fueron levantados en la misma finca donde ubicaba la residencia conyugal. En 1980 el matrimonio obtuvo un préstamo comercial de la Administración de Pequeños Negocios (en adelante S.B.A., por sus siglas en inglés) por la cantidad de $150,000.00 para el **negocio de avicultura**.[11] Para la obtención de dicho préstamo Don Tomás y su esposa, Doña Manuela Navarro Barros, comparecieron como codeudores garantizando la deuda con una hipoteca sobre un inmueble de su propiedad. El dinero del préstamo fue utilizado en su totalidad

---

[11] Ésta es una agencia federal que se dedica principalmente a ayudar a pequeños negocios concediendo préstamos a intereses bajos y ofreciendo ayuda técnica.

para la construcción de cinco (5) ranchos adicionales para el **negocio de avicultura**. Este préstamo se pagó con los ingresos del **negocio avícola** del matrimonio Rodríguez-Montalván.[12] Durante ese mismo año dicho matrimonio construyó una nueva residencia en un terreno propiedad de Don Tomás, quien sufragó todos los gastos de edificación.

Así las cosas, mediante sentencia de 17 de junio de 1983, se decretó el divorcio del matrimonio Rodríguez-Montalván por la causal de separación. De esta forma quedó disuelta la sociedad legal de gananciales y surgió una comunidad de bienes compuesta por los ex cónyuges. En el proceso de divorcio se acordó que la señora Montalván Ruiz continuaría residiendo con los dos (2) hijos menores de edad habidos durante el matrimonio "en [la] propiedad ganancial de ambos, demandante y demandado".[13] Además, se acordó que el señor Rodríguez Navarro asumiría el pago de todas las deudas del matrimonio.[14] El préstamo comercial de $150,000.00 de la S.B.A. se continuaría pagando con los ingresos del **negocio avícola**.

Luego de decretado el divorcio, y de haber dejado de existir la sociedad de gananciales, el señor Rodríguez Navarro asumió el control absoluto y la administración de la comunidad de bienes, **constituida principalmente del negocio de avicultura**. Esto le permitió disponer de todos los ingresos de dicho negocio.[15] La señora Montalván Ruiz, por su parte, se trasladó a residir de forma

---

[12]  Transcripción de la vista en su fondo, testimonio del señor Rodríguez Navarro, pág. 123.

[13]  Así se expresó en la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 8 de octubre de 1997.

[14]  Esta información surge de la sentencia emitida por el foro apelativo intermedio, de la cual se recurre.

[15]  Transcripción, *supra*, pág. 211.

gratuita junto a sus dos (2) hijos a un inmueble propiedad de Don Tomás. El 7 de agosto de 1986 el señor Rodríguez Navarro, dentro de sus gestiones como único administrador del negocio, obtuvo para éste un préstamo comercial de la Corporación de Crédito y Desarrollo Comercial (en adelante C.C.D.C.) por la cantidad de $282,150.00, **a ser pagado con los ingresos del negocio avícola.** Esta suma fue invertida para ampliar el negocio mediante la construcción de seis (6) ranchos adicionales de avicultura. Para diciembre de 1993 el balance de este préstamo era de $198,726.50.

El 5 de agosto de 1994, aproximadamente diez (10) años después de la disolución del matrimonio, la señora Montalván Ruiz presentó una demanda ante el tribunal de instancia en la que, aunque se hace referencia a la liquidación de la sociedad legal de gananciales, realmente se trata de la liquidación de la comunidad de bienes postganancial de los ex cónyuges Montalván Ruiz y Rodríguez Navarro. Alegó, en síntesis: (1) que durante el matrimonio las partes adquirieron bienes muebles e inmuebles que gozaban de la naturaleza de gananciales; (2) que entre tales bienes se encuentra un solar donde fue construida una estructura de bloques y hormigón dedicada a vivienda, localizada en el Barrio Montellano, valorada aproximadamente en $200,000.00, que quedó bajo el dominio y administración del señor Rodríguez Navarro desde el 1985 y que éste ha mantenido arrendada desde esa fecha; (3) que luego de decretado el divorcio el señor Rodríguez Navarro ha tenido bajo su control y dominio el **negocio de avicultura** que establecieron los ex cónyuges durante el matrimonio compuesto de diez (10) ranchos con maquinaria y equipo para la crianza de pollos que mantenía como contratista independiente con la Compañía To-Ricos, Inc.; (4) que el valor de los ranchos, el equipo y las ganancias del negocio excedían la

cantidad de $500,000.00; (5) que los bienes muebles adquiridos durante el matrimonio quedaron bajo el absoluto control y dominio del señor Rodríguez Navarro; (6) que el valor total de los bienes de la comunidad excedía la cantidad de $500,000.00. Además, la señora Montalván Ruiz reclamó la participación del cincuenta por ciento (50%) sobre el valor y las ganancias del **negocio avícola** ascendentes a $631,715.00 para el período comprendido entre 1983 y 1993.

Luego de aquilatar los argumentos de las partes, el foro de instancia emitió sentencia el 8 de octubre de 1997 y determinó que:

Rodríguez [Navarro] tuvo ingresos netos de $631,715 de 1983 a 1993 y la reclamación de la demandante [señora Montalván Ruiz] **se limita a esos años. Todos los ingresos de Rodríguez provienen de su trabajo como avicultor** y se estipularon a base de las planillas de contribución sobre ingresos de Rodríguez para los años de 1983 a 1993. En estas [sic] sólo se reduce [sic] los intereses pagados de los préstamos, no el principal.

El demandado [Rodríguez Navarro] recibió exclusivamente los beneficios de un negocio de crianza de pollos desde el 1983 al 1993, de lo que tiene derecho la demandante [Montalván Ruiz] a recibir la mitad luego de deducirse la suma proporcional producida por los ranchos que construyó el demandado [Rodríguez Navarro] luego del divorcio (6/16 ó 3/8 partes) y los pagos del principal del préstamo ganancial para el negocio que hizo el demandado al S.B.A. y no se incluyó como deducción para estimar el ingreso neto ($150,000). Por

lo tanto, de los $631,715 debemos reducir 3/8 partes correspondientes a los seis ranchones construidos $236,893.12 para un sobrante de $394,821.88. De esta suma procede deducir los $150,000 del préstamo, lo que deja un caudal neto de $244,821.88. Por ende, corresponde a la demandante la suma de $122,410.94. (Énfasis suplido y citas omitidas.)

Con relación a la residencia construida durante el matrimonio, el foro sentenciador determinó que no era ganancial. Resolvió que pertenecía a Don Tomás y su esposa por haber sido éstos quienes sufragaron los gastos para su edificación.

De esta determinación recurrió el señor Rodríguez Navarro ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). El foro apelativo, mediante sentencia de 26 de enero de 1999, revocó la emitida por el foro de instancia y resolvió que al ser superior el pasivo de la sociedad legal de gananciales a su activo a la fecha de su disolución, no existían bienes que liquidar. De otra parte, determinó que, por haber asumido el señor Rodríguez Navarro el remanente de la deuda de $150,000.00 del préstamo con S.B.A., se había liquidado implícitamente el haber ganancial y los ranchos de crianza de pollos habían pasado a su patrimonio privativo.

Inconforme, la señora Montalván Ruiz acudió ante nos aduciendo que el Tribunal de Circuito había errado al determinar que los ingresos percibidos por el señor Rodríguez Navarro eran personales y no frutos generados por la comunidad de bienes entre las partes luego del divorcio.[16]

---

[16] La peticionaria también planteó los siguientes errores que, por la conclusión a la que llegamos, no es necesario discutirlos:

Expedimos el auto solicitado y con el beneficio de los argumentos de las partes procedemos a resolver.


                                    II

En síntesis, el recurso ante nos requiere que determinemos la naturaleza privativa o ganancial de un **negocio avícola en marcha**, a los fines de liquidar una comunidad de bienes que surgió al extinguirse por divorcio la sociedad de bienes gananciales. De determinarse que el negocio avícola era un bien ganancial, tendríamos que precisar la forma más adecuada para llevar a cabo el avalúo del negocio y las ganancias percibidas del mismo.


            A.    La sociedad legal de gananciales

La sociedad legal de gananciales es el régimen económico supletorio, establecido por disposición de ley, a falta de estipulación en contrario o cuando dicha estipulación es ineficaz o insuficiente. Ésta se encuentra definida en el Código Civil por los efectos que produce al momento de su disolución. De esta forma, el Art. 1295, 31 L.P.R.A. sec. 3621, dispone que **los cónyuges, a la disolución del matrimonio, harán suyos <u>por mitad</u> las ganancias y**

---

Abusó de su discreción el Tribunal de Circuito de Apelaciones al solicitar la transcripción de la vista cuando las partes habían dado como correctas las determinaciones de hechos de la sala sentenciadora, causándole con ello perjuicio a la [peticionaria] al traer un hecho nuevo no concluido por instancia que causó la revocación del remedio solicitado y adjudicado.

Erró el Tribunal de Circuito de Apelaciones al resolver[,] en ausencia de prueba[,] que el demandado-recurrido derrotó la presunción de ganancialidad de los bienes existentes al momento del divorcio de las partes.

**beneficios obtenidos indistintamente por cualquiera de ellos durante el matrimonio**. Explica el profesor Diez-Picazo que:

> [S]e trata de un sistema en que la ganancia o beneficio se hace común, pero que no se atribuye a cada cónyuge sino hasta la disolución de la sociedad de gananciales, y **se parte del presupuesto de que aquella ganancia o beneficio es de ambos** porque aun cuando un cónyuge haya tenido una intervención decisiva en la adquisición... la contabilización como ganancia es obra del ahorro y sacrificio también del otro. Luis Diez-Picazo y Antonio Gullón, *Sistema de Derecho civil*, Vol. IV, 7ma ed., Tecnos, 1997, pág. 175. (Énfasis suplido.)[17]

El régimen de la sociedad legal de gananciales comienza el día de la celebración del matrimonio y concluye con la disolución de éste ya sea por muerte, nulidad o divorcio. Art. 1296 del Código Civil, 31 L.P.R.A. sec. 3622. Mientras exista la sociedad de gananciales, ambos cónyuges serán los administradores de ésta y sólo por mandato expreso o tácito de uno de ellos, el otro podrá ejercer la administración exclusiva. Arts. 91 y 93 del Código Civil, 31 L.P.R.A. secs. 284 y 286.

Nuestro ordenamiento jurídico reconoce como axioma primordial el patrimonio individual de los cónyuges separado del de la sociedad. *Pujol Betancourt v. Gordon Menéndez*, res. el 3 de noviembre de 2003, _____ D.P.R._____ (2003), 2003 T.S.P.R. 156, 2003 J.T.S. _____; *García v. Montero Saldaña*, 107 D.P.R. 319, 335 (1978). Cónsono con lo anterior, el carácter ganancial o privativo de los

---

[17] Sobre la sociedad de bienes gananciales véanse además, *Bidot Almodóvar v. Urbino Valle*, res. el 13 de diciembre de 2002, 158 D.P.R. _____ (2002), 2002 T.S.P.R. 151, 2002 J.T.S. 157; *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862, 866 (1981); Raúl Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. I, Universidad Interamericana de Puerto Rico, 1997, pág. 338; José María Manresa y Navarro, *Comentarios al Código Civil español*, Tomo IX, 6ta ed., Reus, 1969, págs. 633, 638; Francisco Fortuny Comaposada, *Régimen de bienes en el matrimonio*, Colección Nereo, 1962, págs. 213-225; José María Reyes Monterreal, *El régimen legal de gananciales*, Gráficas Menor, 1962, pág. 454.

bienes de un matrimonio contraído bajo el régimen de gananciales se ha establecido en el Código Civil. Así, el Art. 1301, 31 L.P.R.A. sec. 3641, declara como bienes gananciales: **los adquiridos por título oneroso a costa del caudal común, independientemente que la adquisición sea para beneficio de la sociedad o de uno solo de los cónyuges;** los obtenidos por la industria, sueldo o trabajo de cualquiera de los cónyuges; y los frutos, rentas o intereses percibidos o devengados durante la vigencia del matrimonio, provenientes de los negocios u otros bienes gananciales o privativos.[18]

De otra parte, los bienes del matrimonio se presumirán gananciales mientras no se demuestre que pertenecen privativamente al marido o a la mujer, a tenor del Art. 1307, 31 L.P.R.A. sec. 3647. El peso de la prueba para rebatir el presunto carácter ganancial recae sobre quien sostiene la naturaleza privativa del bien objeto del litigio. *González Cruz v. Quintana Cortés,* 145 D.P.R. 463, 468-469 (1998); *Echevarría Jiménez v. Scn. Pérez Meri*, 123 D.P.R. 664, 681 (1989); *Espéndez v. Vda. de Espéndez*, 85 D.P.R. 437, 441-442 (1962). Ahora bien, a los fines de satisfacer la conciencia del juzgador, el rigor de la prueba es menor cuando se trata de un pleito entre ex cónyuges o entre los herederos de uno y el cónyuge supérstite, que cuando se litigan intereses de terceros. *García v. Montero Saldaña*, *supra*, pág. 322.

---

[18] De acuerdo con Manresa:

Es ganancial lo que pertenece a la sociedad conyugal o a ambos esposos en común, y no privativamente a cualquiera de ellos. **Es ganancia el sobrante del activo sobre el pasivo de la comunidad al tiempo de la liquidación,** el beneficio resultante después de reintegrar a cada cónyuge su capital propio y cubrir todas las obligaciones de la sociedad. Manresa, *supra*, pág. 639. (Énfasis suplido.)

El matrimonio compuesto por el señor Rodríguez Navarro y la señora Montalván Ruiz inició un **negocio de avicultura** entre 1977 y 1978. Don Tomás, el padre del señor Rodríguez Navarro, los ayudó costeando los materiales y la mano de obra para la construcción de cinco (5) ranchos para la crianza de pollos.[19] Posteriormente, en 1980 **el matrimonio Rodríguez-Montalván obtuvo un préstamo comercial** de la S.B.A. por la cantidad de $150,000.00. **El importe del préstamo fue utilizado por el matrimonio para ampliar el negocio mediante la construcción de cinco (5) ranchos dedicados a la crianza de pollos. Dicho préstamo fue pagado en su totalidad con los ingresos del negocio avícola.** A la luz de los preceptos previamente discutidos, resulta forzoso concluir que **los cinco (5) ranchos construidos con el préstamo de la S.B.A. durante la vigencia de la sociedad de gananciales pertenecen a la extinta sociedad y, por ende, a la comunidad de bienes postganancial y al momento de llevar a cabo la liquidación de ésta será necesario dividirlos por mitad entre los ex cónyuges.** Resuelto este extremo, debemos dilucidar la naturaleza de los otros ranchos construidos una vez disuelta la sociedad de gananciales, pero vigente la comunidad de bienes postganancial.

B.   La comunidad postganancial

Como previamente indicamos, **la sociedad de bienes gananciales** <u>**concluye**</u> **con la disolución del matrimonio.** Art. 1215 del Código Civil, 31 L.P.R.A. sec. 3681. Sin embargo, puede ocurrir que su liquidación no sea coetánea con el divorcio y que, ante la

_____

[19]   La titularidad de estos primeros cinco (5) ranchos no está en controversia. Éstos pertenecen a Don Tomás, padre del señor

inexistencia de un plazo legal para solicitar tal liquidación, se prolongue un estado de indivisión de los bienes que antes pertenecían a la sociedad conyugal por un tiempo relativamente largo.  Este estado de indivisión ha sido denominado por algunos autores como la comunidad postganancial.  Manuel Rivera Fernández, *La comunidad postganancial*, J.M. Bosch Editor, 1997, págs. 9, 26.

"La comunidad postganancial constituye una comunidad de bienes en estado de liquidación entre quienes ostentan su titularidad activa o pasiva (...los ex cónyuges, un cónyuge y los herederos del otro, o los herederos de uno y otro cónyuges)....".  Joaquín J. Rams Albesa, *La sociedad de gananciales*, Tecnos, 1992, pág. 416.  En repetidas ocasiones hemos señalado que **luego de extinta la sociedad de gananciales nace una comunidad de bienes de la cual los ex cónyuges son comuneros hasta que se liquide la misma.**[20]

Como bien indica Rivera Fernández, "nos encontramos con un *patrimonio* cuyo destino natural es su *liquidación*, caracterizado por la nota esencial de la **existencia de una *situación de cotitularidad*** sobre el mismo".  Rivera Fernández, *supra*, pág. 28.  (Énfasis suplido y en el original.)  A la comunidad de bienes que surge entre los ex cónyuges no le serán aplicables las normas relacionadas con la sociedad de gananciales, sino aquellas referentes a la copropiedad que, en ausencia de pacto o de disposiciones especiales, está regida por los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271-1285.  En el caso de marras el matrimonio Rodríguez-

---

Rodríguez Navarro, por haber sido quien asumió los costos para su construcción.

[20]   Véanse *Asoc. Residentes Urb. Sagrado Corazón, Inc. v. Juan A. Arzuaga Álvarez*, res. el 24 de septiembre de 2003, 160 D.P.R. _____ (2003), 2003 T.S.P.R. 141, 2003 J.T.S. _____; *Bidot Almodóvar v. Urbino Valle, supra*; *López v. Meléndez, supra*, pág.

Montalván quedó disuelto mediante sentencia de divorcio emitida el 17 de junio de 1983, extinguiéndose de esta forma la sociedad de gananciales compuesta por ambos. **La extinta sociedad de gananciales no fue liquidada luego de disuelto el vínculo matrimonial. En consecuencia, entre la señora Montalván Ruiz y el señor Rodríguez Navarro surgió una comunidad de bienes** consistente principalmente en el **negocio avícola** que administraba el señor Rodríguez Navarro. Nos corresponde ahora examinar la naturaleza de los bienes adquiridos luego del divorcio a la luz de los preceptos aplicables a la nueva relación jurídica postmatrimonial surgida entre los ex cónyuges.

La comunidad de bienes, en sentido genérico, es la situación que ocurre "cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271. La comunidad puede recaer sobre toda clase de derechos. Por otro lado, la copropiedad o condominio se refiere a la misma situación de cotitularidad cuando se presenta en el derecho de propiedad y únicamente puede recaer sobre cosas específicas y determinadas. Federico Puig Peña, *Compendio de Derecho civil español*, 3ra ed., Ediciones Pirámide, 1976, págs. 259-260; José Ramón Vélez Torres, *Curso de Derecho civil*, Tomo II, Universidad Interamericana de Puerto Rico, 1983, págs. 143-144. En este sistema cada comunero posee una parte alícuota, no concreta, en la cosa.[21] José Castán Tobeñas, *Derecho civil español, común y foral*, Tomo 2, Vol. I, Reus, 1992, pág. 460.

Conforme el Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272, la participación de los comuneros, tanto en los beneficios como en

---

287-288; *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228-229 (1984); *García López v. Méndez García*, 102 D.P.R. 383, 395 (1974).

las cargas, será en proporción a sus cuotas. **En casos como el de autos, la participación de los comuneros, es decir, de los ex cónyuges, será <u>por partes iguales</u>**. *Calvo Mangas v. Aragonés Jiménez*, *supra*, pág. 228. Cada uno de los ex cónyuges ostenta "una *cuota abstracta sobre el 'totum' ganancial* subsistente mientras perviva la expresada comunidad postganancial y hasta que, mediante las oportunas operaciones de liquidación-división, se materialice en una parte individualizada y concreta de bienes para cada uno de los comuneros". Rivera Fernández, *supra*, pág. 34. (Énfasis en el original.)

Las cuotas de los ex cónyuges recaerán sobre los bienes que antes pertenecían a la sociedad de gananciales. Lo anterior obedece a que precisamente la comunidad está integrada por los bienes que en el momento de la disolución de la sociedad constituían la masa común y por los frutos que tales bienes produjeron. Díez-Picazo y Gullón, *supra*, pág. 215; Rams Albesa, *supra*, pág. 418; Rivera Fernández, *supra*, pág. 72.[22] De otra parte, resulta importante señalar que "si se parte de la admisión de que sobre la masa ganancial tienen ambos cónyuges una directa e inmediata titularidad activa y pasiva... no se pueden presentar cuestiones o interrogantes artificiosos sobre la posición de los cónyuges, ex cónyuge o herederos respecto de tales bienes: **son titulares de una comunidad**". Rams Albesa, *supra*, pág. 417. (Énfasis suplido.)

---

[21] Ésta es la comunidad romana, que es la reglamentada por nuestro Código Civil.

[22] Sobre los bienes que integran la comunidad de bienes, señala Albaladejo que: "la masa ganancial no se transforma, es su régimen el que cambia, **aplicado a los bienes existentes (o, eventualmente, sus subrogados),** que siguen gravados con las mismas deudas, conservando la misma coherencia externa e idéntica autonomía....". Manuel Albaladejo, *Comentarios al Código Civil y compilaciones*

El Art. 333 del Código Civil, 31 L.P.R.A. sec. 1278, dispone que los condueños tendrán la plena propiedad de su cuota, así como de los frutos y utilidades que les correspondan. En vista de este derecho de propiedad, mientras subsista la comunidad de bienes, cada uno de los ex cónyuges podrá servirse de las cosas comunes, **siempre que disponga de ellas conforme a su destino y no se vea perjudicado el interés de la comunidad, ni se impida a los demás copartícipes utilizarlas según su derecho**. Art. 328 del Código Civil, 31 L.P.R.A. sec. 1273. De lo anterior se puede colegir que las facultades atribuidas a los comuneros sobre la cosa común "están necesariamente subordinadas al derecho de todos los demás". *Asoc. Residentes Urb. Sagrado Corazón, Inc. v. Juan A. Arzuaga Álvarez*, *supra*. (Énfasis en el original.)

Sobre este particular, Santos Briz, según citado en *Soto López v. Colón*, 143 D.P.R. 282, 289 (1997), aclara que **"[u]sar las cosas de manera que perjudi[que] al interés de la comunidad es, desde luego, que uno de los condóminos la posea todo ella excluyendo a los demás"**. Jaime Santos Briz, *Derecho civil: Teoría, y práctica*, Tomo II, Ed. Rev. Der. Privado, 1973, pág. 323. (Énfasis suplido.) El citado tratadista expone, además, que "el condómino que ocupe la mayor parte de la cosa común ha de devolverla a la masa común para el disfrute de sus copartícipes y el suyo propio, en la proporción que le corresponda....". Santos Briz, *supra*, pág. 324. **Mientras exista la comunidad de bienes, "ninguno de los ex cónyuges puede**

---

*forales*, Tomo XVIII, Vol. 2, 2da. ed., Ed. Revista de Derecho Privado, 1999, págs. 592-593. (Énfasis suplido.)

tener el monopolio de ella". *Soto López v. Colón Meléndez*, *supra*, pág. 289. (Énfasis suplido.)[23]

Durante el período de indivisión de la comunidad postganancial podría ocurrir que se lleven a cabo adquisiciones con bienes procedentes de la extinta sociedad de gananciales para incrementar el bien común, que se incorporen nuevos bienes al patrimonio provenientes de los que pertenecían a la sociedad conyugal o, como ocurrió en el caso ante nos, **que la adquisición se lleve a cabo por cuenta y en representación de la comunidad postganancial.**[24] En este

---

[23] Con el objetivo de evitar que uno de los comuneros ejerza el control absoluto de los bienes en copropiedad, el Código Civil establece las normas referentes a la autoridad que tienen los condueños sobre ésta. Así, cualquier comunero podrá obligar a los demás a contribuir con los gastos que genere la conservación de los bienes que integran la comunidad. Art. 329, 31 L.P.R.A. sec. 1274. En aquellos casos donde se trate de un acto de administración, serán obligatorios los acuerdos de la mayoría de los comuneros. Art. 332, 31 L.P.R.A. sec. 1277. Se entenderá por mayoría los participantes que representen la mayor cantidad de los intereses por los que esté compuesta la comunidad. *Id.* Cuando el acto que se pretenda llevar a cabo conlleve una alteración de la cosa común, se requerirá el consentimiento unánime de los condueños, aun cuando de dicho acto se deriven ventajas para todos los comuneros. Art. 331, 31 L.P.R.A. sec. 1276. Sobre este particular, véase *Asoc. Residentes Urb. Sagrado Corazón v. Juan A. Arzuaga Álvarez*, *supra*.

[24] Atendiendo a esta circunstancia, indica el tratadista Díez-Picazo que existen dos (2) soluciones.

> **La primera es la rigurosa aplicación del principio de subrogación real: el bien adquirido entra a formar parte del patrimonio colectivo si la contraprestación que se paga procedía de él.** La segunda es entender que la sociedad es acreedora simplemente de lo que se dispuso para adquirir, pero el bien adquirido no es suyo. **...Nos inclinamos por la primera solución.** Díez-Picazo y Gullón, *supra*, págs. 216-217. (Énfasis suplido.)

El tratadista Rivera Fernández, también se ha ocupado de examinar la controversia que nos atañe. De acuerdo con su posición, cuando un ex cónyuge tiene el control de todos los bienes de la comunidad postganancial y adquiere bienes a título oneroso a costa del caudal común, hay que optar entre dos (2) preceptos legales: el de la subrogación real; y el principio de que el que percibe rentas y frutos de la comunidad postganancial, tiene que devolverlos. A tenor del primero de estos preceptos, el

último caso, señala el tratadista Rivera Fernández que **"a falta de voluntad en contrario, el bien adquirido entraría a formar parte del patrimonio colectivo indiviso"**. Rivera Fernández, *supra*, pág. 80. (Énfasis suplido.)

En el caso de autos, luego de quedar disuelto el matrimonio Rodríguez-Navarro, no se llevó a cabo la correspondiente liquidación de la sociedad de gananciales. En consecuencia, los bienes pertenecientes a la sociedad, así como las cargas, pasaron a formar una comunidad de bienes donde la cuota de ambos ex cónyuges es por partes iguales, conforme surge de las normas reseñadas. Los bienes y cargas que antes conformaban el haber ganancial sufrieron transformaciones. En primer lugar, el **negocio avícola en marcha** quedó bajo la exclusiva administración del señor Rodríguez Navarro. Éste, como parte normal de las operaciones y administración del negocio, obtuvo un préstamo comercial por la cantidad de $282,150.00. El importe del préstamo fue utilizado para ampliar el

---

de la subrogación real, lo adquirido se integra a la masa patrimonial común, viniendo a sustituir la prestación. Respecto a la segunda alternativa, el que se apropió "de frutos y rentas comunes, debe, simplemente devolverlas, pero no está obligado a más, conservando el dominio de los adquiridos". Rivera Fernández, *supra*, págs. 79-80.

Rams Albesa ha asumido una postura similar a la del profesor Díez-Picazo al indicar que al régimen de copropiedad existente entre los ex cónyuges se integrarán los bienes "subrogados a que dé lugar el tráfico de unos y otros". Rams Albesa, *supra*, pág. 418. Igual solución proveen Albaladejo y LaCruz Berdejo al indicar que a la masa común pertenecen los bienes que pertenecían a la sociedad ganancial, así como los bienes subrogados. Albaladejo, *supra*; José Luis LaCruz Berdejo, *Elementos de Derecho civil*, Tomo IV, 4ta ed., J.M. Bosch Editor, 1997, pág. 354.

Al referirnos a la subrogación real es menester señalar que ésta implica la permanencia de una misma condición jurídica sobre un elemento patrimonial que sustituye o reemplaza a un elemento anterior. Aunque se opera un cambio de cosas, producto, por ejemplo, de una enajenación, tal cambio deja inalterada la situación jurídica preexistente que calificaba a la cosa sustituida o cambiada. Véase Ramón Ma. Roca Sastre, *Estudios varios*, Instituto de España, 1988, págs. 30-31.

negocio mediante la construcción de seis (6) ranchos adicionales. En vista de las anteriores transacciones, tanto la deuda común como los bienes del negocio aumentaron. Así es que para 1993 el **negocio avícola** propiedad de ambos ex cónyuges contaba con un total de once (11) ranchos. A su vez, la deuda del préstamo tenía un balance de $198,726.50.

Así, **los seis (6) ranchos, construidos con el préstamo comercial otorgado al negocio por C.C.D.C., entraron a formar parte del patrimonio colectivo pro indiviso de la comunidad de bienes postganancial y los ex cónyuges son dueños de una cuota sobre éstos en partes iguales.** Como podrá observarse, nos encontramos ante una ampliación de un negocio avícola perteneciente al patrimonio común. La construcción de los seis (6) ranchos fue viable mediante un préstamo comercial obtenido por el negocio que, a su vez, fue pagado con los ingresos provenientes de éste.

No cabe duda que el señor Rodríguez Navarro llevó a cabo la ampliación del **negocio avícola** en el ejercicio de sus funciones como administrador de este bien común con la aprobación tácita de la condueña, la señora Montalván Ruiz, y en representación de la comunidad postganancial.[25] De lo anterior se colige que no estamos meramente ante un aumento en el valor del caudal común producto del trabajo de uno de los condueños, como ha resuelto la mayoría del Tribunal. En el caso de autos el señor Rodríguez Navarro llevó a cabo gestiones administrativas, de forma unilateral, en

---

[25] Un examen de la transcripción de la vista en su fondo que consta en autos revela que la señora Montalván Ruiz, a pesar de conocer la ampliación que experimentó el negocio, no se opuso ni impidió las gestiones de su ex esposo. Como señala Beltrán de Heredia, en los actos de administración donde haya inercia por parte del otro cotitular, se estimará que ha mediado aprobación tácita de los actos del otro comunero. José Beltrán de Heredia,

representación de la comunidad, las cuales repercutieron no solamente en la edificación de nuevos ranchos para la crianza de pollos, sino en el acrecentamiento del deuda común.

Ante estas circunstancias, adjudicar un carácter privativo a los seis (6) ranchos equivaldría a despojar a la señora Montalván Ruiz de la titularidad que tanto la ley como nuestra jurisprudencia reiteradamente han reconocido. Más aún, sería condonar el monopolio que un condueño ejerce sobre prácticamente el único bien de la comunidad, relegando al ex cónyuge, la señora Montalván Ruiz, únicamente a recibir el beneficio de vivir sin la obligación de pagar un canon de arrendamiento en un inmueble propiedad de su ex suegro, Don Tomás. Tal solución es improcedente, pues la peticionaria señora Montalván Ruiz, como cotitular, tiene derecho a percibir los frutos producto del negocio avícola y a servirse de él sin menoscabar, a su vez, los derechos del otro comunero, el señor Rodríguez Navarro. Esta alternativa no pretende prolongar la existencia de la sociedad legal de gananciales que, por mandato de ley, quedó extinta con el divorcio, sino que aspira a adjudicar la participación **por partes iguales** que la ley reconoce a cada comunero, a falta de prueba en contrario. Tal solución se hace forzosa cuando es uno solo de los condueños quien tiene el control de los bienes comunes y quien ha hecho gestiones por las cuales ha resultado obligada la comunidad. Sostenemos, por tanto, que erró el Tribunal de Circuito al resolver que por el solo hecho de ser el señor Rodríguez Navarro administrador del negocio avícola, los ranchos construidos con los préstamos comerciales que a su vez

---

*La comunidad de bienes en Derecho español*, Ed. RDP, 1954, págs. 298-310.

fueron pagados con los ingresos de dicho negocio, pasaron a formar parte de su patrimonio privativo.

Ahora bien, resulta incontrovertible el hecho de que el señor Rodríguez Navarro se ha desempeñado como único administrador del negocio perteneciente a la comunidad. De esta forma él ha aportado su esfuerzo y trabajo para el acrecentamiento del acervo común. Como previamente señalamos, las gestiones administrativas realizadas por el señor Rodríguez Navarro tuvieron la aprobación tácita de su ex cónyuge, la señora Montalván Ruiz.

Actualmente existe un silencio legislativo en cuanto a disposiciones que reglamenten la administración de la comunidad postganancial. El legislador parece haber tenido en mente que la liquidación se produciría de forma inmediata con la disolución de la sociedad de bienes gananciales. La realidad, sin embargo, ha sido otra. El estado de indivisión suele perdurar un tiempo prolongado haciendo necesario el uso de otras figuras jurídicas para regir sus actividades. Puede haber una designación expresa o tácita de un administrador por parte de los ex cónyuges cotitulares del patrimonio. También puede ocurrir que la administración recaiga sobre uno de los ex cónyuges, quien se convertiría en un **"mandatario con mandato tácito** o... [en] un gestor de negocios sin mandato, para los actos de administración urgente,... que es propia de un comunero"**. Rams Albesa, *supra*, pág. 419. (Énfasis suplido.)

En tales circunstancias, el administrador "está sometido a las reglas propias del mandatario con mandato tácito o las reglas relativas a la gestión de negocios ajenos... pudiéndosele exigir responsabilidades por su gestión". Rivera Fernández, *supra*, pág. 112. **Por lo tanto, en atención al trabajo y esfuerzo desplegados por el señor Rodríguez Navarro, debemos reconocerle un derecho a ser**

**remunerado por sus gestiones administrativas**. Como expone el tratadista Rams Albesa, "el administrador tiene un efectivo derecho a que su trabajo se remunere". Rams Albesa, *supra*, pág. 419. Así lo reconoce el Código Civil al disponer que **el mandato puede ser remunerado o gratuito**. Art. 1602 del Código Civil, 31 L.P.R.A. sec. 4423. Al momento de la liquidación debe asignársele a éste un sueldo razonable como retribución de sus gestiones administrativas.

Ahora bien, como surge del testimonio del propio señor Rodríguez Navarro, éste percibía en su totalidad los ingresos producto del negocio,[26] por lo tanto, es menester determinar si se benefició con una cantidad mayor a la que tiene derecho como remuneración razonable por su trabajo administrativo. Para ello es necesario examinar sus planillas de contribución sobre ingresos, que fueron admitidas en evidencia. En la eventualidad que el análisis de los ingresos reportados por éste arrojara que utilizó para su beneficio personal una cantidad mayor a la que le correspondía como sueldo, el señor Rodríguez Navarro tendría que restituir al acervo común la porción utilizada en exceso. Si ocurriese el caso contrario, es decir, que éste hubiere utilizado una cantidad menor a la que le correspondía como remuneración razonable por sus servicios, al hacerse la liquidación de la comunidad habría que restituírsele tal cantidad. **Con esta solución aseguramos que cada uno de los ex cónyuges pueda beneficiarse de los bienes comunes y, a su vez, que se retribuya a uno de ellos su trabajo administrativo que, aunque ha sido llevado a cabo de forma unilateral y absoluta, indudablemente merece ser compensado.**

Una vez determinado el carácter común de los bienes que componen el negocio avícola y reconocida la gestión administrativa

del señor Rodríguez Navarro como un derecho a ser remunerado, nos corresponde examinar los preceptos aplicables para llevar a cabo la liquidación del negocio.

III

La liquidación de la sociedad de gananciales, y de la comunidad de bienes que surge luego de su disolución, comprende todas las operaciones necesarias para determinar la existencia e identificación de los bienes que componen el haber común. Luego se procederá a su división por partes iguales entre ambos ex cónyuges o sus sucesiones en interés. A esta cantidad o valor final, a ser dividido por mitad, se llega después de deducir y adjudicar los créditos correspondientes a cada uno. Lo anterior conlleva la necesidad de identificar aquellos bienes que corresponden privativamente a cada uno de los ex cónyuges, así como aquella parte de los bienes comunes que haya sido utilizada para beneficio exclusivo de uno de los comuneros y de las responsabilidades imputables al caudal común. En términos generales, la liquidación puede resumirse en tres (3) operaciones: (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o del balance líquido partible; y (3) división y adjudicación de los bienes gananciales. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 91 (1981); *Janer Vilá v. Tribunal Superior*, 90 D.P.R. 281, 300-301 (1964).[27]

El inventario es la fase inicial del proceso. Se le define como la relación detallada del activo (bienes y derechos) y pasivo (obligaciones y cargas) de la comunidad en el momento de su

---

[26]    Transcripción, *supra*, pág. 211.
[27]    Véase además, Fraticelli Torres, *supra*, págs. 506-509.

disolución, acompañada de su tasación. *Quetglas v. Carazo,* 134 D.P.R. 644, 657 (1993). En el activo se deberá incluir el conjunto de los bienes comunes, incluyendo los privativos de cada ex cónyuge, **a los fines de conocer las posibles transformaciones que éstos sufrieran y que repercuten en los gananciales y su determinación**. Serrano Geyls, *supra*, pág. 458.

Concluido el inventario, se procederá al avalúo o tasación de los bienes. Aunque la referencia a esta operación surge de modo incidental en el Art. 1324 del Código Civil, 31 L.P.R.A. sec. 3699, ésta podrá llevarse a cabo utilizando **peritos o mediante acuerdo** de los interesados, "**el cual, obviamente, nunca sustituye los derechos que puedan realmente existir**". Serrano Geyls, *supra*, pág. 459. (Énfasis suplido.) Una vez pagadas las deudas, cargas y obligaciones de la comunidad de bienes, se hará la liquidación y se les repartirá por partes iguales el remanente a los ex cónyuges. *Id.*; Art. 1319 del Código Civil, 31 L.P.R.A. sec. 3694.

**Del expediente no surge un inventario de todos los bienes de la pareja al decretarse el divorcio y disolverse la sociedad de bienes gananciales.** Ante la inexistencia de un inventario y por tratarse el bien en controversia de un negocio en marcha, resulta necesario hacer algunos señalamientos sobre los factores que deben tomarse en consideración a los fines de determinar el valor de dicho negocio.

IV

Un negocio en marcha (*going concern*) se ha definido como aquel que se mantiene operando de forma continua y con la expectativa de seguir funcionando indefinidamente. B. Garner, *Black's Law*

*Dictionary*, 7ma ed., 1999, pag. 699.[28] El valor de un negocio en marcha (*going concern value*) comprende no sólo el valor de los bienes muebles e inmuebles que en particular componen los haberes del negocio, sino también los bienes muebles intangibles, como lo sería su plusvalía (*goodwill*). *Id.* A su vez, la plusvalía ha sido definida como el acrecentamiento del valor de un negocio por causas extrínsecas, tales como la buena reputación y el patrocinio, entre otras. Ignacio Rivera García, *Diccionario de términos jurídicos*, 2da ed. rev., 1985, pág. 207.

Para determinar el valor de un negocio en marcha es necesario tomar en consideración factores, tales como: (1) el historial financiero del negocio; (2) la proyección futura de las ventas y los gastos del negocio; (3) la inversión de capital requerida por el negocio en el futuro; (4) el historial general del negocio; (5) los productos que mercadea; (6) información sobre competencia, suplidores, contratos, licencias, certificaciones y reclamaciones, si alguna. V. Smith Gordon, *Corporate Valuation: A Business and Professional Guide*, Wiley, 1988, pág. 11. Dentro del proceso de avalúo del negocio en marcha, es decir, de la determinación de su justo valor en el mercado, deberán identificarse: los activos tangibles,[29] como por ejemplo terrenos, mejoras al terreno, edificaciones, maquinarias y equipo, muebles de oficina, herramientas, vehículos y construcciones en progreso; y los activos

---

[28] En inglés se define: "a commercial enterprise actively engaging in business with the expectation of indefinite continuance". *Id.*

[29] Activos tangibles son aquellos sujetos a ser percibidos por el tacto. M. Moliner, *Diccionario de uso del español*, Gredos, 1991, pág. 1259.

intangibles,[30] entre los que se incluyen patentes, contratos y mano de obra. Smith Gordon, *supra*, pág. 46. Asimismo, deberán formar parte del avalúo los activos y pasivos corrientes y la plusvalía que el negocio ha generado a través de los años.[31]

Conviene puntualizar que el valor, tanto del negocio en marcha como del resto de los bienes y cargas que integran la comunidad de bienes postganancial a ser liquidada, debe estimarse hasta el momento en que se lleve a cabo la liquidación. Debido a lo anterior, el avalúo de los bienes, incluyendo el **negocio avícola**, así como de sus obligaciones, debe computarse hasta el momento en que se decrete la liquidación y, por ende, no debe limitarse hasta 1993 como solicitó la peticionaria, señora Montalván Ruiz. Es menester reiterar que los tribunales concederán el remedio que en Derecho proceda, aun cuando las partes no lo hayan solicitado o hayan solicitado uno distinto. Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499, 513 (1997).

V

En síntesis, entendemos que los ranchos del negocio avícola construidos durante la vigencia del matrimonio Rodríguez Montalván pertenecen a los ex cónyuges en partes iguales por tener la naturaleza de bienes gananciales. De otra parte, los ranchos construidos luego de decretado el divorcio pertenecen a la comunidad

---

[30] Activos intangibles son aquellos que carecen de sustancia física. Smith Gordon, *supra*, pág. 129.

[31] En los activos corrientes están incluidos el efectivo, las inversiones a corto plazo, las cuentas por cobrar, el inventario (materia prima, bienes en proceso y bienes terminados). Los pasivos corrientes incluyen las cuentas por pagar y las porciones de deudas a pagar a largo plazo, entre otros.

postganancial surgida entre la señora Montalván Ruiz y el señor Rodríguez Navarro. Cada uno de éstos tiene una cuota por partes iguales en los bienes que integran dicha comunidad. Además, en vista de las gestiones administrativas que como mandatario ejerció el señor Rodríguez Navarro, debería asignársele una remuneración razonable por sus servicios. Posteriormente, deberían liquidarse los bienes que componen la comunidad postganancial a la luz de los factores expuestos sobre la valoración de un negocio en marcha. Este proceder salvaguarda el derecho de propiedad de cada uno de los ex cónyuges –sin prolongar por *fiat* judicial la existencia de una sociedad legal de gananciales que la ley declara extinta– y, a su vez, protege los intereses del comunero que **no tuvo participación en la administración del caudal** que permaneció en copropiedad.

Por los fundamentos antes expuestos, revocaríamos la sentencia emitida por el Tribunal de Circuito y devolveríamos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.


MIRIAM NAVEIRA MERLY
Jueza Presidenta