ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ELISA ACEVEDO<br><br>APELADA<br><br>V.<br><br>ERIC WILLIAM AREIZAGA AREIZAGA; EDRIC DANIEL AREIZAGA AREIZAGA; ALMACENES TITO AREIZAGA INC.<br><br>APELANTES | KLCE202300090 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala de Aguadilla<br><br>Caso Núm. AG2020CV00709<br><br>Sala:601<br><br>Sobre:<br><br>PARTICIÓN DE COMUNIDAD DE BIENES |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 abril de 2023.

Eric William Areizaga Areizaga, Edric Daniel Areizaga Areizaga y Almacenes Tito Araizega, Inc. (denominados en conjunto "parte demandada" o "parte apelante") presentaron una *Apelación* en la que solicitan que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI) el 12 de diciembre de 2022. Mediante dicho dictamen el tribunal *a quo* determinó la existencia de una comunidad de bienes entre William Areizaga García, fenecido padre de los apelantes, y Elisa Acevedo Morales, y le asignó a ésta una participación del 25% de los bienes generados por el señor Areizaga y por los Almacenes Tito García, Inc. durante el periodo de la relación (2005-2020).

En tanto se nos solicita la revisión de una *Sentencia Parcial* dictada de conformidad con la Regla 42.3 de Procedimiento Civil, se acoge el recurso como una apelación, tal cual presentado, a pesar de la designación alfanumérica otorgada por la secretaria de este Tribunal.

Por los fundamentos que expondremos a continuación se *confirma* el dictamen apelado.

I

El 18 de septiembre de 2020, Elisa Acevedo Morales (señora Acevedo o apelada) presentó una *Demanda* sobre liquidación de comunidad de bienes contra Eric y Edric Areizaga Areizaga (hermanos Areizaga) y Almacenes Tito Areizaga, Inc. (Almacén). Expuso que convivió como pareja con William Areizaga García (señor Areizaga), padre de los hermanos Areizaga Areizaga, desde el 2005 hasta su fallecimiento, el 24 de julio de 2020. Afirmó que durante la relación constituyeron una comunidad de bienes en la cual el señor Areizaga le encomendó múltiples gestiones para incrementar su capital tales como: realizar compras y pagos de mercancía para el Almacén de provisiones que operaba el señor Areizaga; compra de materiales de construcción para obras de construcción de la residencia del pueblo de Rincón; preparación de almuerzos para el causante, sus hijos y empleados y otros proyectos realizados en conjunto. Por consiguiente alegó que cuidó al señor Areizaga hasta su fallecimiento; que la incorporación del Almacén se realizó con bienes y activos en los cuales tiene participación; y que realizó gestiones para la comunidad que tuvieron el efecto de incrementar los activos y los bienes que aparecen a nombre del señor Areizaga y del Almacén. Con ello reclamó una participación en la comunidad de bienes que como mínimo asciende a $750,000.00.

La parte demandada presentó su *Contestación a Demanda* en la cual negó que entre el señor Areizaga y la señora Acevedo existió una comunidad de bienes, pues no hubo un pacto expreso ni implícito para consolidar bienes, ni enriquecimiento injusto. Según indicó, siempre mantuvieron sus bienes y propiedades separadas y solo sostuvieron una relación estrictamente amorosa. Alegó que el señor Areizaga pagó el contratista y los materiales para la reconstrucción de la propiedad en el solar de la señora Acevedo en la que residieron y que le realizó varios regalos durante la relación.

También planteó que los bienes que poseía el señor Areizaga, en particular el Almacén y la propiedad de Rincón, eran privativos pues le fueron adjudicados en la liquidación de la sociedad de gananciales que sostuvo con Jeanette Areizaga Pérez antes de comenzar la relación consensual con la señora Acevedo. Negó el que ésta hubiese trabajado o aportado esfuerzo o capital en el Almacén y que estuviese autorizada en la cuenta del negocio o en la cuenta personal del señor Areizaga. Señaló que la reconstrucción de la propiedad de Rincón se realizó con dinero privativo del señor Areizaga, quien pagó el contratista, los materiales y los muebles.

En el *Informe sobre conferencia preliminar entre abogados…* las partes estipularon los hechos siguientes:[1]

1. La demandante es doña Elisa Acevedo …
2. Los demandados, Eric William Areizaga Areizaga y Edrick Daniel Areizaga Areizaga, son hijos del causante William Areizaga; de un matrimonio previo con doña Jeanette Areizaga Pérez. …
3. Almacenes Tito Areizaga Inc., es una corporación inscrita en el Departamento de Estado de Puerto Rico desde 2014. …
4. En el año 2007 William Areizaga (T/C/P Tito Areizaga) y Elisa Acevedo se mudaron al Sector Playuela del Barrio Borinquen de Aguadilla; conviviendo en la residencia propiedad de la señora Acevedo la cual fue construida en terreno que esta recibió por herencia.
5. Las partes vivieron en público, pacífico e ininterrumpido concubinato por aproximadamente quince años.
6. Elisa Acevedo nunca trabajó por su cuenta desde que empezó a convivir con William Areizaga.
7. Como parte de la relación consensual William, efectuó regalos ordinarios a Elisa y pagaba todos los gastos del hogar y personales de ella.
8. Dos días luego del sepelio de William Areizaga, el codemandado, Eric William Areizaga Areizaga, visitó la vivienda de la Demandante Acevedo y se llevó el juego de llaves de los "Almacenes", llaves de la casa de Rincón y la caja fuerte.
9. El 5 de agosto de 2020 el codemandado, Edrick Daniel Areizaga Areizaga, se llevó la guagua Toyota Tacoma, año 2018, …de la residencia de la demandante.
10. William Areizaga falleció el 24 de julio de 2020.
11. Todos los gastos del hogar constituido entre la Demandante y el Causante William Areizaga eran satisfechos por este último.
12. La demandante no aportó capital en dinero a los negocios de su compañero consensual William Areizaga.
13. Las planillas de contribución sobre ingresos presentadas por William Areizaga desde su divorcio, las presentó como soltero.

---

[1] Sometido el 31 de marzo de 2022, SUMAC entrada núm. 103.

14. La dirección residencial colocada en dichas planillas era la residencia que compartió con la demandante en el Barrio Borinquén Sector Playuela.

15. La demandante nunca tuvo cuenta bancaria a su nombre durante la duración del concubinato ni en conjunto con William Areizaga.

El TPI celebró la vista en su fondo el 4 y 5 de abril de 2022 dirigida a establecer si existió o no una comunidad de bienes y de ser así, cuál era el porciento de participación de la señora Acevedo en ésta. Durante la misma declararon por la parte demandante: Rubén Acevedo, Melissa Díaz Acevedo, David Xirau Zgonia, Nilda I. Roldán Díaz, Ángel Cotté Nieves y la demandante. Por la parte demandada declaró el codemandado, Eric W. Areizaga Areizaga. También se admitieron varios documentos por estipulación de las partes.[2]

Luego de varios trámites procesales que no son necesarios pormenorizar, el TPI emitió una *Sentencia Parcial* en la que resolvió que la señora Acevedo tiene una *participación de 25% de los bienes generados por el señor Areizaga y por el Almacén durante el periodo de la relación*

---

[2] Evidencia documental estipulada:
1. *Resolución* emitida el 25 de febrero de 2005, en el caso de divorcio por consentimiento mutuo entre el señor Areizaga y Jeanette Areizaga Pérez, ADI2004-0632.
2. *Resolución* emitida el 23 de septiembre de 2020 sobre Declaratoria de Herederos de la sucesión del señor Areizaga.
3. Planilla de Caudal Relicto del señor Areizaga.
4. Acta de Edificación, Liquidación de Bienes Gananciales y Cesión de Derechos otorgad por Elisa Acevedo Morales el 16 de diciembre de 2002. (Se establece que es titular de propiedad en Bo. Borinquen en Aguadilla valorada en $40,000).
5. Acta de Edificación otorgada por Elisa Acevedo Morales el 25 de enero de 2017. (Se establece que edificó una propiedad valorada en $90,000 en su propiedad en el Bo. Borinquen de Aguadilla.)
6. Permiso de Construcción obtenido por el señor Areizaga para construcción en la propiedad de Rincón (2013).
7. Certificación de Pago de Arbitrios Municipales por concepto de construcción Rincón (2013).
8. Recibo de Mueblería Zaida.
9. Contrato de Servicios de Construcción para propiedad Rincón, suscrito por el señor Areizaga el 17 de junio de 2013, obra valorada en $85,000.
10. Póliza del Fondo del Seguro del Estado a favor del señor Areizaga para cubrir riesgo de construcción de residencia.
11. Facturas de Paradise Ceramic.
12. Factura del Ingeniero Eric Rosa Lugo.
13. Certificación de Pago de Arbitrios Municipales por concepto de construcción en Rincón
14. Acuerdo de Construcción para propiedad Rincón, suscrito por el señor Areizaga
15. Recibo.
16. Factura del Taller de Rejas Desoto.
17. Facturas de Edgardo Glass and Aluminum Work.
18. Certificación de préstamo hipotecario de la Cooperativa de Ahorro y Crédito de Isabela a nombre del señor Areizaga por $195,000 con balance de $152,460.49 al 14 de julio de 2020.
19. Fotos.
20. Documento escrito a mano el 3 de junio de 2020 por el señor Areizaga autorizando a la señora Acevedo Morales a tomar decisiones sobre su tratamiento médico durante operación.

*desde el año 2005 hasta el 2020.*[3] A su vez, designó al Lcdo. Miguel A. Román Villanueva como contador partidor a quien se le ordenó presentar su informe en un término de 120 días. Para su determinación el tribunal consideró los hechos estipulados y aquilató la prueba testifical y documental desfilada, de la cual formuló las siguientes determinaciones de hechos:

1. La relación entre la demandante y William Areizaga fue una muy unida desde el año 2005 hasta la muerte de éste.
2. La relación entre los hijos de ambos era muy unida y compartían juntos en todo tipo de eventos familiares.
3. La señora Acevedo se encargaba de todas las responsabilidades del hogar y ayudaba a William Areizaga cuando éste la necesitaba, aun cuando nunca se le pagó un salario ni beneficio por su trabajo en el almacén.
4. La señora Acevedo se encargaba, además, de coordinar todos los asuntos personales del señor Areizaga, es decir, citas médicas, viajes, etc.
5. Al fallecer William Areizaga, sus hijos le retiraron el acceso a la señora Acevedo a toda documentación, cuentas, negocio y cualquier otro que tenía en la relación.
6. La señora Acevedo asistía a William Areizaga cuando éste la requería y aunque no laboraba en el negocio, si había que realizar alguna labor ésta lo hacía.
7. Todos los gastos de la señora Acevedo, eran cubiertos por el señor William Areizaga, conducta realizada por los aproximadamente quince años que vivieron juntos.
8. Las partes viajaban juntas, celebraban todas sus actividades de días importantes como un núcleo familiar, siendo William Areizaga quien sufragaba todos los gastos de la pareja.

En desacuerdo la parte demandada presentó una *Solicitud de determinaciones de hechos adicionales y moción de reconsideración* ante el foro primario. No obstante, mediante *Orden* emitida y notificada el 29 de diciembre de 2022, el TPI declaró *No Ha Lugar* ambos petitorios.

Aun en desacuerdo la parte demandante presentó oportunamente la *Apelación* que nos ocupa en la cual formuló los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera Instancia al determinar que existía una comunidad de bienes entre la Sra. Elisa Acevedo y el fenecido William Areizaga en contra de la normativa establecido en el caso *María Elena González Rivera v. Raul Robles Laracuente*, supra.

Erró el Honorable Tribunal de Primera Instancia al no desestimar la demanda y establecer que la demandante tiene derecho a un 25% de las ganancias del capital del fenecido Areizaga sin haber realizado, ningún tipo de aportación económica, intelectual o de esfuerzo y haber establecido con

---

[3] *Sentencia Parcial* emitida el 12 de diciembre de 2022.

prueba robusta y convincente que hubo tal aumento como indica el caso de *María Elena González Rivera v. Raul Robles Laracuente*, supra.

Erró el Honorable Tribunal de Primera Instancia al efectuar dicha determinación de participación basado en el cuido y las labores de la casa que realizaba la Sra. Acevedo, equiparándolo a una Sociedad Legal de Gananciales en un matrimonio, contrario a la doctrina establecida en el caso *María Elena González Rivera v. Raúl Robles Laracuente*, supra.

En su recurso la parte apelante negó que se estableciera mediante prueba que entre la señora Acevedo y el señor Areizaga se constituyó una comunidad de bienes. A su juicio, la prueba demostró que la pareja mantuvo sus cuentas bancarias por separado, que el señor Areizaga mantuvo separada la administración de sus negocios y que la señora Acevedo no aportó dinero, bienes o servicios que produjeran ganancias o un aumento en el valor de los bienes de éste y del Almacén. Argumentó, además, que las gestiones de cuido, domésticas y las gestiones de trabajo alegadamente realizadas por la señora Acevedo no son suficientes para establecer enriquecimiento injusto, por ser rutinarias de una relación.

En su *Alegato* la apelada sostuvo que la prueba demostró que entre ella y el señor Areizaga existió una comunidad de bienes en la que aportó con su trabajo, esfuerzo y labores tanto en el hogar común como en el negocio.

Contando con la posición de ambas partes esbozamos a continuación el marco jurídico aplicable y resolvemos de conformidad.

II

### a.      *Concubinato*

En nuestro ordenamiento se reconocen dos tipos de concubinato: (1) el "queridato" y el (2) *more uxorio*. El concubinato *queridato* surge cuando uno o ambos miembros de la pareja están casados con otra persona y por tanto están impedidos de casarse entre sí. *Caraballo Ramírez v. Acosta*, 104 DPR 474, 476, esc. 1 (1975). El concubinato *more uxorio* surge cuando ambos son solteros y por ende aptos para casarse, pero deciden vivir pública y notoriamente como un matrimonio, aunque sin

cumplir con las formalidades exigidas para éste. *Íd*; *Torres Vélez v. Soto Hernández*, 189 DPR 972, 989 - 990 (2013).

En el concubinato no se generan derechos económicos como en el matrimonio por el mero hecho de establecerse una relación. *Ortiz De Jesús v. Vázquez Cotto*, 119 DPR 547, 549 (1987). No obstante, si se ha constituido una comunidad de bienes la persona concubina que así lo reclame deberá presentar prueba de ello. *Torres Vélez v. Soto Hernández,* supra; *Caraballo Ramírez v. Acosta,* 104 DPR 474, 481 (1975).

Los concubinos podrán demostrar un interés propietario sobre los bienes adquiridos o que hayan incrementado de valor mientras estuvo vigente la relación, de la misma forma que se establece la existencia de una comunidad de bienes, a saber: 1) como pacto expreso; 2) como pacto implícito, y 3) como un acto justiciero para evitar el enriquecimiento injusto de la otra parte. *Domínguez Maldonado v. E.L.A.*, 137 DPR 954, 967 (1995).

Se denomina pacto expreso el "contrato o convenio para crear y establecer una comunidad de bienes de origen voluntario". R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, 1ra ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, Vol. 2, pág. 858. Para este no hay requisitos de forma, por lo que puede ser oral o escrito. *Íd.* Solo puede acreditarse por medio de expresiones escritas o verbales, hechas antes, durante o después del concubinato. *Íd.*, pág. 861.

De otra parte, se denomina pacto implícito a las relaciones contractuales de hecho en las que una persona realiza un determinado acto o adopta un comportamiento que, sin declarar abiertamente voluntad alguna, permite inferir que tal voluntad existe y la presupone necesariamente". *Íd.*, pág. 860. El pacto implícito que se desprende espontáneamente de la relación humana y económica constituida entre las partes puede probarse por todos los medios disponibles en Derecho. *Caraballo Ramírez v. Acosta*, *supra*, pág. 481.

Los siguientes actos, por sí solos, no sostienen que exista pacto implícito: trabajo en el negocio del otro concubino, aunque se le entregue una participación en las utilidades; tareas domésticas en el hogar; administración de los bienes del otro; simples gestiones económicas de la vida diaria y la contribución a los gastos del hogar o de enfermedades. Serrano Geyls, *op cit.*, pág. 861-862. En cambio, ejemplos para acreditar la existencia del pacto son: el uso del nombre de ambos concubinos en el nombre del negocio, una cuenta bancaria común, compra de bienes en común, y la coposesión de bienes. *Íd.*, pág. 862 En particular, el concubino que permanece en el hogar y realiza diariamente las tareas domésticas, contribuye notablemente a la economía del concubinato pues no solo economiza a los concubinos el pago de salarios a otras personas, sino que priva al que lo realiza de la oportunidad de dedicarse al trabajo remunerado externo y de hacer así otro aporte en dinero a la comunidad. *Íd.*

De existir una comunidad de bienes, debe atenderse a las disposiciones aplicables a dicha figura jurídica, según reguladas por nuestro Código Civil para su adjudicación y liquidación. De no establecerse la existencia de una comunidad de bienes, por pacto expreso o implícito, la parte que solicita participación económica podrá acreditar que aportó bienes, valores y servicios que resultaron en ganancias y, como un acto justiciero para evitar el enriquecimiento injusto de la otra parte, podría reclamar el valor de bienes, valores y servicios, y las correspondientes ganancias obtenidas. *Caraballo Ramírez v. Acosta*, *supra*, pág. 481-482.

### b. Comunidad de bienes y su liquidación[4]

La comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas. Art. 326, 31 LPRA ant. sec. 1271.[5] En ausencia de un pacto expreso, la participación de los comuneros en la administración de la cosa tenida en común, así como su

---

[4] Considerando que la relación entre la señora Acevedo Morales y el señor Areizaga transcurrió de 2005 a 2020, utilizaremos las disposiciones del derogado Código Civil de 1930, para analizar la controversia planteada. Esto de conformidad con la disposición transitoria dispuesta en el Art. 1808 del Código de Civil de 2020, 31 LPRA sec. 11713.

[5] Art. 835, Código Civil de 2020.

parte en el activo y pasivo de esta cosa, será proporcional a sus respectivas cuotas, que se presumirán iguales, mientras no se pruebe lo contrario. Art. 327, 31 LPRA ant. sec. 1272;[6] *Montalván v. Rodríguez*, 161 DPR 411, 423 (2004).

No obstante, si una parte alega que la participación de la otra es menor, debe rebatir tal presunción bajo el estándar de preponderancia de la prueba, probando el valor de la participación, esfuerzo y trabajo en los bienes adquiridos y objeto de reclamación. *Íd.*; véase, además, Regla 110(f) de Evidencia, 32 LPRA Ap. VI. A su vez, cuando el reclamante fundamenta su participación económica sobre los bienes generados durante el concubinato en la figura del enriquecimiento, no puede ampararse en la presunción de igual en la proporción de las cuotas que dispone el Art. 327 del Código Civil de 1930. *Caraballo Ramírez v. Acosta*, supra, págs. 485-486.

Toda vez que ningún comunero está obligado a permanecer en la comunidad de bienes, en cualquier momento, podrá pedir la división de la cosa común. Art. 334, 31 LPRA ant. sec. 1279.[7] Para ello se han de aplicar las reglas concernientes a la división de la herencia. Art. 340 del Código Civil, 31 LPRA ant. sec. 1285.[8] La liquidación implica tres operaciones: (1) la formación de un inventario con avalúo y tasación; (2) la determinación del haber social o del balance líquido partible; y (3) la división y adjudicación de los bienes. *Montalván v. Rodríguez*, 161 DPR 411, 457 (2004); *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 91 (1981); *Janer Vilá v. Tribunal Superior*, 90 DPR 281, 300-301 (1964).

### C. Estándar de revisión

Las determinaciones de los tribunales de primera instancia son revisables ante este Tribunal de Apelaciones, como cuestión de derecho, mediante el recurso de apelación. Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y. El estándar de revisión que este foro debe observar al

---

[6] Arts. 837 y 838, Código Civil de 2020.
[7] Art. 850, Código Civil de 2020.
[8] Art. 859, Código Civil de 2020.

examinar una determinación final exige una consideración distinta de las conclusiones de derecho y de las determinaciones de hechos del foro de instancia.

Las conclusiones de derecho de los tribunales de instancia son revisables en su totalidad, de manera que la interpretación del tribunal de mayor jerarquía prevalece sobre la decisión del foro inferior. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). De otro lado, las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V. Esto quiere decir que los tribunales apelativos brindamos deferencia a las determinaciones de hechos de los foros primarios y, de ordinario, aceptamos como correcta su apreciación de la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala. *Dávila Nieves v. Meléndez Marín,* supra. Esta deferencia se fundamenta en que es el foro primario el que se encuentra en mejor posición para evaluar la credibilidad de un testigo y aquilatar la prueba, en cambio, los foros apelativos solo tenemos récords mudos e inexpresivos. *Muñiz Noriega v. Muñiz Bonet*, 177 DPR 967, 987 (2010).

Esta norma de deferencia ante las determinaciones de hechos no es absoluta. Cuando las conclusiones de hechos se fundamentan en prueba documental o pericial, es norma establecida que el tribunal revisor se encuentra en igual posición que el tribunal sentenciador para evaluarla. Incluso el foro apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta, con el fin de proveer el justo valor probatorio. *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194 (2021). Además, a modo de excepción, nuestra deferencia cede cuando se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Gómez Márquez v. Periódico el Oriental, Inc.,* 203 DPR 783, 793 (2020).

En particular, el error manifiesto ocurre cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Íd.*; *Méndez v. Morales*, 142 DPR 26, 36 (1996). Se incurre en error manifiesto cuando la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Esto ocurre cuando el tribunal descansa exclusivamente en una parte de la prueba, mientras hubo otra prueba que la contradijera. *Íd.*

III

En síntesis, la parte apelante planteó que el foro de instancia erró al determinar que entre el señor Areizaga y la señora Acevedo existió una comunidad de bienes y que ésta tiene derecho a un 25% de las ganancias del capital de aquel, sin que se estableciera mediante prueba robusta y convincente su aportación económica, intelectual o de esfuerzo. Enfatizó que tal determinación es contraria a lo resuelto por el Tribunal Supremo en *González Rivera v. Robles Laracuente*, supra.

Para empezar, es preciso aclarar que el caso *González Rivera v. Robles Laracuente,* 203 DPR 645 (2019), fue resuelto por el Tribunal Supremo mediante Sentencia. Como es sabido, el Alto Foro emite una sentencia cuando interesa que lo resuelto solo aplique a las partes del caso. Si, por el contrario, interesa que lo concluido aplique a casos similares emite una Opinión. Las opiniones del Tribunal Supremo son las únicas que establecen precedentes, esto es, normas o doctrinas jurídicas que aplican a otros casos de naturaleza similar. Por consiguiente, tratándose de una sentencia, no tienen valor de precedente ni obliga a los tribunales inferiores.

Tal cual reseñamos el TPI emitió una *Sentencia Parcial* en la que tras aquilatar la prueba testifical, la prueba documental y adoptar los hechos estipulados, determinó que la demandante y el señor Areizaga convivieron como pareja desde el 2005 hasta el fallecimiento de éste en el 2020. La relación entre ambos era unida y compartían juntos en eventos familiares y viajes. Creyó además que la señora Acevedo se encargó de

todas las responsabilidades del hogar, coordinaba los asuntos personales del señor Areizaga (citas médicas y viajes) y le ayudaba con gestiones del Almacén cuando la necesitaba. Aunque el foro de instancia no consignó expresamente que entre las partes se constituyó una comunidad de bienes de pacto implícito esa es la conclusión que podemos inferir de las expresiones consignadas, a saber:

> […] Aún cundo ella no devengó un sueldo fijo, nunca falto [sic] nada en la residencia de esta, en la cual vivió prácticamente toda la relación el señor Areizaga, por lo que ambos aportaron tiempo, atención, trabajo y bienes el uno al otro, aunque parte de ello, no fuera de manera económica, pero el cual tiene un valor, [sic]. …
>
> El no resolver de esta manera, sería borrar quince años de relación entre las partes, pensando que estaban enajenados de la operación del negocio, el cual era el sustento de ambos, y del cual, de distintas maneras, ya fuera en tiempo, gestiones, trabajo en el mismo o en la casa, ambos tenían participación. Además, cada uno aporto [sic], tiempo, trabajo y la residencia entre otros, por parte de la señora Acevedo.

De haber sido esa la conclusión del foro primario, coincidimos en que de la prueba desfilada y de los hechos estipulados se puede inferir que entre la apelada y el señor Areizaga surgió implícitamente una comunidad de bienes. Veamos.

La señora Acevedo declaró que convivió como pareja e ininterrumpidamente con el señor Areizaga desde el 2005 hasta el 2020, fecha en que este falleció de cáncer. Inicialmente, rentaron una propiedad y desde el 2007 residieron en una propiedad de ella que ubica en el Bo. Playuela de Aguadilla.[9] El señor Areizaga era comerciante y desde que lo conoció tenía un Almacén de licores y otros artículos. Estando con ella, aproximadamente para el 2013, compró otro local para el negocio en el Bo. Camaseyes de Aguadilla, el cual consiste de una estructura que en la parte de abajo ubica el Almacén y arriba cuenta con 4 apartamentos.[10] Durante su relación el señor Areizaga le solicitó que fuera su mano derecha y que le ayudara con su negocio pues no contaba con secretaría.[11] Según indicó este le encomendaba asuntos del negocio casi todos los días. Por ejemplo,

---

[9] TPO págs. 259 – 261.
[10] TPO págs. 271-273.
[11] TPO pág. 315.

le asistía en efectuar pagos, preparar facturas, ir al banco o a las cooperativas a pagar o a depositar, pagar las utilidades, comprar sellos en colecturía, y realizar gestiones de patentes.[12] Dijo que siempre cocinaba y le llevaba almuerzo a él y a sus hijos al negocio.[13] Reconoció que no se le pagaba un sueldo por sus gestiones en el negocio, ni se le realizaban aportaciones al seguro social.[14]

También declaró que aparte de las gestiones para el Almacén se encargaba de atenderlo, cocinar, limpiar en el hogar, lavar la ropa, planchar y cuidarlo durante su convalecencia.[15] Admitió que la casa de Rincón era propiedad del señor Areizaga y que en el 2013 la reconstruyó completa en cemento, pues era de madera.[16] Según dijo, el plano de la propiedad fue realizado según los gustos de ambos y ella eligió las losas y los baños a su gusto.[17] Entre los documentos estipulados hay varios recibos de los que surge la firma del señor Areizaga como quien pagó por los materiales y equipos adquiridos (Paradise Ceramic, Taller de Rejas Desoto, instalación de aires).[18]

En cuanto a los bienes adquiridos por el señor Areizaga durante su relación mencionó el local del nuevo Almacén el cual tiene mayor inventario que el anterior, guaguas (Tacoma, Jeep), un terreno al lado de la casa de uno de sus hijos, y cambió la lancha que tenía por otra.[19]

Durante el contrainterrogatorio la señora Acevedo admitió que el señor Areizaga aportó el dinero para construir la casa en el solar que era de ella, en la cual residieron desde el 2007. Según surge del Acta de Edificación otorgada por ella, dicha edificación costó $95,000. [20] Reconoció que el señor Areizaga no le informó de la incorporación del negocio bajo el nombre Almacenes Tito Areizaga Inc. y que se enteró de ello durante el descubrimiento de prueba. Dijo que no aparece como codeudora del

---

[12] TPO págs. 275-278.
[13]  TPO pág. 280.
[14] TPO pág. 308.
[15] TPO págs. 281-298.
[16] TPO págs. 298-299.
[17] TPO págs. 300-303.
[18] Véase *Apéndice* de la *Apelación*, págs. 74-82.
[19] TPO págs. 311-313.
[20] TPO págs. 328-329.

préstamo hipotecario que el señor Areizaga suscribió para comprar el local del nuevo Almacén y que no ha pagado nada de ese préstamo. Admitió además que no poseía acciones en la corproacion, no formaba parte de su directiva, ni tenía una resolución corporativa que la autorizara a hacer gestiones a favor de ésta.[21] También aceptó que no fue empleada de la corproacion, no tenía poder decisional, ni autoridad para contratar y despedir personas, ni para intervenir en sus negocios.[22]

Sobre la propiedad en Rincón reconoció que era del señor Areizaga, quien suscribió todos los contratos para la remodelación y pagó todos los gastos. Declaró que ella nunca trabajó en la construcción de dicha propiedad y que su intervención se limitó a seleccionar los equipos que se pusieron en la residencia.[23]

De otra parte, durante su testimonio el codemandado Eric Areizaga Areizaga declaró que su padre compró el Almacén en el 1995 cuando aún estaba casado con su señora madre y que trabaja allí desde que tenía 15 años.[24] Dijo que en el 2014 su padre cogió un préstamo de $195,000.00 en la Cooperativa de Isabela para comprar el local del nuevo Almacén el cual no se había saldado al momento de su fallecimiento.[25] Durante el contrainterrogatorio indicó que al fallecer su padre realizaron varios pagos y eventualmente, saldaron la cuenta con el seguro de vida que su padre le había puesto y el sobrante se lo dividió con su hermano, por ser los únicos herederos.[26] De la Certificación emitida por la Cooperativa de Ahorro y Crédito de Isabela surge que al 14 de julio de 2020, el balance del préstamo era de $152,460.49.

De lo anterior se puede concluir que, en efecto, la señora Acevedo y el señor Areizaga constituyeron una comunidad de bienes de pacto implícito en la que cada uno aportó bienes o servicios. Según lo testificado, el señor Areizaga le solicitó a la señora Acevedo que fuera su mano

---

[21] TPO págs. 332-334.
[22] TPO págs. 352-355.
[23] TPO págs. 357-364.
[24] TPO págs. 550-551.
[25] TPO págs. 363-364.
[26] TPO págs. 375-377.

derecha y le ayudara con su negocio, pues no tenía secretaria. El señor Areizaga aportó dinero para construir la propiedad en el solar de la señora Acevedo y costeó todos sus gastos personales y del hogar común. La señora Acevedo aportó el solar en el que se construyó la propiedad en la que residieron durante quince años. También aportó su esfuerzo, no solo en las múltiples gestiones que realizaba para el Almacén, sino también en las labores cotidianas del hogar familiar. Durante el tiempo que duró la relación la señora Acevedo no generó ingresos propios, no obtuvo un sueldo, ni aportó al seguro social. Sin embargo, su trabajo tanto en las tareas domésticas como en las gestiones del negocio le ahorró a la comunidad el pago de salarios a otras personas por tales servicios y a su vez le limitó de tener un empleo externo remunerado. En suma, la señora Acevedo pudo probar la existencia de una comunidad de bienes ya que la relación humana y económica establecida con el señor Areizaga demuestra que ambos se obligaron implícitamente a aportar cada uno bienes, esfuerzo y trabajo para beneficio común.

No obstante, si bien la comunidad de bienes probada activó la presunción de igualdad de cuotas, de la prueba surge una desproporción en la aportación de cada uno a la comunidad que impidió, tanto al tribunal de instancia como a este foro, concluir que la participación de la señora Acevedo es de 50%. Es por ello que el TPI adjudicó a la parte apelada un 25% de participación de los *bienes generados por el señor Areizaga y por el Almacén durante el periodo de la relación.*

Cabe señalar que tal determinación se limita a los bienes generados durante el tiempo que duró la relación concubinaria y no se extiende a los bienes que tenía el señor Areizaga antes de comenzar la relación. En particular, entendemos que la prueba presentada fue insuficiente para determinar que se constituyó una comunidad de bienes en cuanto a la propiedad de Rincón.

Según la prueba desfilada la propiedad de Rincón le pertenecía al señor Areizaga antes de iniciar la relación con la señora Acevedo, pues le

16

fue cedida tras la liquidación de la sociedad de gananciales que tuvo con su exesposa. Durante la relación concubinaria éste la reconstruyó en cemento sufragando todos los gastos de construcción, equipo y muebles con su dinero. La señora Acevedo admitió que no hizo aportación económica alguna, ni trabajó en dicha reconstrucción. Su participación se limitó a aportar ideas para el diseño del plano y a elegir a su gusto los equipos instalados en la propiedad. Consideramos que tales actos por sí solos no son prueba inequívoca de la voluntad del señor Areizaga de constituir una comunidad de bienes con respecto al referido bien.

En conclusión, no encontramos que el tribunal *a quo* haya incurrido en pasión, prejuicio, parcialidad o error manifiesto en sus determinaciones de hechos, por lo que aplicamos la norma de deferencia debida a dicho foro. A su vez, entendemos que los errores de derecho señalados por la parte apelante no se cometieron. Procede continuar el procedimiento de liquidación de la comunidad de bienes mediante la formación de un inventario de los bienes generados por el señor Areizaga y el Almacén de 2005-2020 con su respectivas tasaciones y avalúos; la determinación del balance líquido partible y la adjudicación de los bienes correspondiente al 25% a la señora Acevedo.

IV

Por los fundamentos antes expuestos aclaramos el alcance y *confirmamos* la *Sentencia Parcial* apelada y se devuelve el caso al TPI para que continue el proceso de liquidación de la comunidad de bienes.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones