Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| WIDALYS VILLALONGO CRUZ<br><br>Demandante - Apelada<br><br>v.<br><br>LUCIANO MANUEL VARGAS MEDINA<br><br>Demandada – Apelante | KLAN202500091 | Apelación procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Civil número: CE2022CV00023<br><br>Sobre: División de Bienes Gananciales |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de marzo de 2025.

Con el fin de dividir una comunidad post ganancial, el Tribunal de Primera Instancia ("TPI") ordenó que se vendiese un inmueble. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues un comunero no está obligado a permanecer en comunidad ni a tolerar el uso privativo del inmueble de la comunidad por parte del otro comunero.

I.

En marzo de 2022, la Sa. Widalys Villalongo Cruz (la "Demandante") interpuso la acción de referencia, sobre liquidación de comunidad de bienes post gananciales (la "Demanda"), en contra del Sr. Luciano Manuel Vargas Medina (el "Demandado").

En lo pertinente, la Demandante alegó que, durante su matrimonio con el Demandado (disuelto en 2021), las partes adquirieron un inmueble ubicado en Ceiba (la "Propiedad"). Aseveró que la Propiedad era la residencia principal del matrimonio y que, "actualmente[,] el demandado reside" en la misma y "ha hecho suyo el mobiliario … adquirido durante el matrimonio." La Demandante

planteó que "no desea continuar en comunidad con el demandado" y, por tanto, solicitó que se liquidara la misma.

En enero de 2023, las partes informaron al TPI que habían acordado la división de los activos y pasivos de la comunidad, excepto lo relacionado con la Propiedad. Posteriormente, las partes informaron al TPI que estaban en negociaciones dirigidas a solucionar el asunto pendiente.

No obstante, a finales de mayo de 2024, la Demandante informó al TPI que, aunque las partes habían llegado a un acuerdo el mes anterior, este no pudo concretarse. Solicitó la reanudación de los procedimientos y el señalamiento de una vista con antelación al juicio.

Por su parte, el 30 de mayo, el Demandado aseveró que había solicitado un préstamo para liquidar la participación de la Demandante en la Propiedad. No obstante, el banco le requirió un acuerdo firmado por ambas partes, el cual no se pudo suplir porque el Demandado proponía un término de seis (6) meses para realizar el pago de la participación de la Demandante. Solicitó que continuaran los procedimientos.

El 31 de mayo, el TPI señaló una vista con antelación al juicio para el 30 de septiembre de 2024.

Durante la vista, la Demandante informó que había rechazado las ofertas del Demandado porque no estaba de acuerdo en recibir su participación a plazos. Informó que su interés era que la Propiedad fuera vendida. Por su parte, el Demandado sostuvo que no tenía interés en vender la Propiedad. Añadió que en dos ocasiones la Demandante se retractó luego de aceptar inicialmente su oferta.

El 21 de noviembre, la Demandante incoó una *Moción en Solicitud de Orden*. Informó que no se había realizado el refinanciamiento de la Propiedad. De todas maneras, sostuvo que,

aun con el refinanciamiento, el Demandado no contaba con el dinero para pagarle su participación. Aseveró que los pagos hipotecarios de la Propiedad estaban atrasados y solicitó la venta de la misma en pública subasta.

El 22 de noviembre, el TPI ordenó al Demandado presentar su postura en cuanto a lo solicitado por la Demandante en un término de quince (15) días.

Mediante una Sentencia notificada el 27 de noviembre, el TPI declaró con lugar la Demanda y, así, ordenó la venta de la Propiedad mediante subasta pública. Además, desglosó los bienes que las partes acordaron repartirse.

El 9 de diciembre, el Demandado solicitó la reconsideración de la Sentencia. Señaló que, en dos ocasiones, las partes habían estado pendientes de firmar el refinanciamiento de la Propiedad, pero la Demandante se retractaba luego. Añadió que, de haberse firmado el refinanciamiento, el pago restante a la Demandante se hubiese finiquitado antes de noviembre de 2024. Sostuvo que la Propiedad era su residencia, donde quería pasar su vejez, y que la Demandante obraba de mala fe. Sostuvo que los pagos hipotecarios estaban al día.

La Demandante se opuso a la solicitud de reconsideración. Afirmó que estuvo dispuesta a llegar a un acuerdo que pudiera satisfacer su participación, pero que el Demandado no contaba con el dinero completo para pagarla. Añadió que el Demandado tuvo su oportunidad para adquirir la Propiedad y no lo hizo. Sostuvo que resultaría en un enriquecimiento injusto concederle tiempo adicional al Demandado, pues ella pagaba un alquiler que era el doble del pago hipotecario que hacía el Demandado.

Mediante un dictamen notificado el 7 de enero, el TPI declaró *No Ha Lugar* la solicitud de reconsideración.

Aún inconforme, el 6 de febrero, el Demandado presentó la apelación de referencia; formula los siguientes señalamientos de error:

1. Erró en derecho el Tribunal de Primera Instancia al dictar sentencia sin que hubiera transcurrido el término de quince (15) días concedido por el propio tribunal en su orden de 17 de diciembre de 2024.

2. Erró en derecho el Tribunal de Primera Instancia al no celebrar vista para dilucidar los méritos de la controversia.

3. Erró en derecho el Tribunal de Primera Instancia al no imponer honorarios y costas a la demandante-apelada por su conducta temeraria al negarse en dos (2) ocasiones a firmar el refinanciamiento a pesar de que el demandado-apelado había aceptado de buena fe pagar la cuantía solicitada por esta en pago de su participación.

4. Erró en derecho el Tribunal de Primera Instancia al declarar No Ha Lugar la reconsideración instada por el demandado-apelante a la cual se acompañó evidencia de que las alegaciones de la demandante-apelada eran falsas, temerarias y no se ajustaban a la realidad fáctica.

La Demandante presentó su alegato en oposición[1]. Resolvemos.

II.

La sociedad legal de bienes gananciales es el régimen económico matrimonial que rige de manera supletoria en ausencia de capitulaciones matrimoniales válidas. Ésta comienza con la celebración del matrimonio y concluye con su disolución mediante muerte, divorcio o nulidad. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978 (2010).

Contraído el matrimonio bajo el régimen de la sociedad legal de gananciales, la gestión que realiza cada cónyuge se hace en beneficio de dicha sociedad y no para beneficio individual. *Íd.* Durante la existencia de la sociedad legal de gananciales, los cónyuges son codueños y coadministradores de la totalidad del

---

[1] El Demandado nos solicitó que ordenásemos el desglose de ciertos anejos incluidos por la Demandante junto con su alegato. Dado que no hemos considerado el contenido de dichos anejos al emitir esta decisión, consideramos académica dicha solicitud, por lo cual no tenemos nada que proveer al respecto.

patrimonio matrimonial, sin distinción de cuotas. *Montalván v. Rodríguez,* 161 DPR 411, 420 (2004); véase, además, los Artículos 488-489 del Código Civil, 31 LPRA secs. 6911-6912.[2]

En consecuencia, este régimen económico tiene personalidad jurídica distinta a los cónyuges que la componen pero, a su vez, ambos poseen titularidad conjunta sobre el patrimonio ganancial. *Montalván, supra.* Es decir, los bienes que componen el patrimonio matrimonial en la sociedad legal de gananciales pertenecen a ambos cónyuges. *Reyes v. Cantera Ramos Inc.,* 139 DPR 925 (1996).

Según el Artículo 513 del Código Civil, 31 LPRA sec. 6965, son bienes gananciales los adquiridos durante la vigencia del matrimonio a expensas del caudal común, así como los obtenidos por la industria, el sueldo o trabajo de cualquiera de los cónyuges y los frutos, rentas o intereses devengados mientras subsiste la unión, procedentes de bienes comunes o privativos.

Por otro lado, el Artículo 509 del Código Civil, 31 LPRA sec. 6961, establece que son bienes privativos de cada uno de los cónyuges:

> (a) los que le pertenecen desde antes de contraer matrimonio, o desde antes de que la sociedad adquiera vigencia si esta se establece después;
>
> (b) los que adquiere por título gratuito durante la vigencia de la sociedad, sea por donación, por legado o por herencia;
>
> (c) los que adquiere a costa o en sustitución de otros bienes privativos;
>
> (d) los bienes y los derechos patrimoniales inherentes a su persona y los no transmisibles o indisponibles en vida a favor de un tercero;
>
> (e) el resarcimiento por los daños inferidos a su persona o a sus bienes privativos;
>
> (f) las cantidades o los créditos adquiridos antes de la vigencia de la sociedad y pagaderos en cierto número de años, aunque las sumas vencidas se reciban durante la vigencia de esta; y

---

[2] Los Artículos 1295-1326 del Código Civil de 1930, 31 LPRA der. secs. 3621-3701, contenían disposiciones similares.

(g) los adquiridos por el derecho de retracto sobre bienes que le pertenecían antes de estar vigente la sociedad.

Al disolverse el vínculo matrimonial, se extingue la sociedad legal de bienes gananciales y surge una comunidad de bienes. Esta estará compuesta por todos los bienes del haber antes ganancial, y cada participante posee una cuota con el correspondiente derecho a intervenir en la administración de la comunidad post ganancial. Dicha comunidad perdurará hasta que todas las operaciones conducentes a su eventual liquidación concluyan. *LSREF2 Island Holdings, Ltd., Inc. v. Ashford R.J.F., Inc.,* 201 DPR 1026, 1034 (2019). A falta de un contrato o de disposiciones especiales, esta comunidad estará gobernada por las normas establecidas en el Código Civil referentes a la figura de la comunidad de bienes.[3]

Asimismo, ambos excónyuges pueden administrar la comunidad, así como solicitar su división, puesto que ninguno está obligado a permanecer en comunidad. Artículo 850 del Código civil, 31 LPRA sec. 8223; *Montalván,* 161 DPR a la pág. 422. Cuando uno de los excónyuges solicita la división, se liquidan los bienes que pertenecían a la sociedad legal de gananciales y deja de existir la comunidad post ganancial.

Durante la existencia de la comunidad de bienes, ninguno de los excónyuges puede tener su monopolio. Cuando uno de los cónyuges mantiene el control y uso de los bienes de la comunidad, el otro tiene un derecho superior como comunero a que le pague una suma liquida, específica y periódica. *Soto López v. Colón,* 143 DPR 282, 289 (1997). El uso exclusivo del bien común por uno solo de los comuneros, sin resarcir al otro, es contrario a los principios elementales de equidad, que impiden el enriquecimiento injusto.

---

[3] Véanse, Artículos. 547 al 554 del Código Civil, 31 LPRA secs. 7041–7048, así como las disposiciones relacionadas a la comunidad de bienes en los Arts. 835-859, 31 LPRA secs. 191-8232.

*Díaz v. Aguayo,* 162 DPR 801, 811, 814 (2004).  El comunero que alegue fue excluido de su participación en la comunidad, deberá identificar un acto obstativo que suponga tal exclusión o que hizo un requerimiento afirmativo de su derecho. *Molina González v. Álvarez Gerena,* 203 DPR 442, 457 (2019).

III.

Luego de examinado cuidadosamente el expediente, concluimos que actuó correctamente el TPI al ordenar la venta de la Propiedad para culminar la liquidación de la comunidad post ganancial entre las partes.

Contrario a lo que sugiere el Demandado, la Demandante no estaba obligada a aceptar los términos de las diversas ofertas realizadas por este.  Más aún, consideramos válida y razonable la postura de la Demandante, en cuanto a exigir el pago de su participación en un solo plazo, particularmente tomando en consideración que es el Demandado quien ha estado disfrutando de la Propiedad por varios años.

Recuérdese que ninguna de las partes está obligada a permanecer en la comunidad post ganancial de la cual la Propiedad es parte.  Por tanto, la Demandante tiene derecho a solicitar la liquidación de la cosa común mediante la venta del único bien pendiente de adjudicar.  Una vez disuelto el matrimonio y la sociedad ganancial, no puede uno de los excónyuges comuneros aprovechar exclusivamente los bienes comunes indivisos.  *Díaz v. Aguayo,* 162 DPR a la pág. 814.

Por otra parte, contrario a lo planteado por el Demandado, resulta inconsecuente en este caso que el TPI emitiera la Sentencia sin que antes recibiera la postura del Demandado al respecto.  Nada de lo planteado por el Demandado luego de la Sentencia, ni ante el TPI en reconsideración, ni ante este Tribunal, difiere de lo que ya el Demandado había consignado antes para récord ante el TPI.  Más

importante aún, el asunto se tornó académico cuando el Demandado tuvo la oportunidad de presentar su postura en la moción de reconsideración de la Sentencia, lo cual fue considerado por el TPI antes de que dicho foro denegara la referida moción.

Finalmente, no tiene razón el Demandado al plantear que la Sentencia tenía que incorporar un precio mínimo para utilizarse en la subasta de la Propiedad. Ello es un asunto que puede atenderse por el TPI como parte de, y durante, el trámite post-sentencia.

IV.

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones